IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGE P. SHEDD, JR., *et al.*, | ) ) ) | |
| Plaintiffs. | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 14-00275-CB-M |
| WELLS FARGO HOME MORTGAGE, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## **ORDER**

This matter is before the Court on a Renewed Motion to Dismiss filed by Defendants Wells Fargo Home Mortgage, Inc. and Monument Street Funding, II, LLC seeking dismissal of various counts of the First Amended Complaint ("the Amended Complaint") for failure to state a claim upon which relief can be granted and supporting brief. (Docs. 24 & 25.) Plaintiffs have filed a brief in response. (Doc. 27.) As discussed below, the Court finds that some counts are due to be dismissed and others are not.

**Procedural Background**

On May 9, 2014, Plaintiffs George P. Shedd, Jr. and Pamela J. Shedd ("the Shedds") filed a complaint in the Circuit Court of Mobile, Alabama against defendants Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), Monument Street Funding, II, LLC ("Monument"), and Barclays Capital Real Estate, Inc. ("Barclays"). The complaint asserted sought various state law causes of action and ought damages and injunctive relief against the Defendants in connection with the Shedds'

home mortgage on property located in Mobile, Alabama. The Defendants removed the action to this Court asserting removal jurisdiction based on diversity of citizenship. Shortly after removal all Defendants filed motions to dismiss the complaint. Plaintiffs responded with an amended complaint, which expanded the factual allegations and added several causes of action. Defendants' renewed motions to dismiss followed.

**The Amended Complaint**

The First Amended Complaint ("the Amended Complaint") is based on events related to the servicing of the Shedds' mortgage by the Defendants. In 2001, the Shedds signed a promissory note and executed a mortgage, secured by their residence in Mobile, Alabama, to The Mortgage Outlet. Barclays serviced the loan pursuant to a contract with The Mortgage Company. Barclays continued to service the loan after the loan and mortgage were assigned to Monument, which is owned by Wells Fargo, in 2007. In 2008, the Shedds filed a Chapter 11 plan of reorganization in the United States Bankruptcy Court for the Southern District of Alabama. Barclays, the loan servicer, represented to the bankruptcy court that it was the creditor and sought a relief from the automatic stay. In an order dated April 25, 2008, the bankruptcy court "noted that Barclays and Plaintiffs had entered into an adequate protection agreement" and that "Plaintiffs would pay Barclays their regular mortgage payment plus an additional $306.62 monthly, beginning with the April 2008 payment, and 'upon confirmation of the Plan of Reorganization, the terms of the confirmed plan shall control,' including 'the additional payment to be made HomeEq for purposes of paying out the pre-petition arrearage and charges.'"

(Am. Compl. ¶ 7, Doc 17.)  The bankruptcy court ultimately confirmed the reorganization plan, which required the Shedds to pay the additional $306.62 for 60 months to satisfy the pre-petition arrearage of $16,500 in full.

The Shedds began paying the $306.62 as required, and continued to do so, but Barclays (and Monument) failed to apply the payments to the pre-petition arrearage as agreed.  In September 2008, Barclays notified the Shedds the loan was in default, accelerated the debt and scheduled a foreclosure.  "Throughout 2009 and in 2010 . . . Barclays continued to . . . wrongfully initiat[e] foreclosure proceedings; misallocate[e] payments [or refuse] payments . . . fail[ ] to properly credit mortgage interest,  [incorrectly] report[ed] Plaintiffs to credit reporting agencies as delinquent.  (*Id.* ¶ 9(M).)  Also, in 2009 and in 2010, "Barclays . . .  wrongfully disburs[ed] $3,576.3 for 'hazard insurance' to unknown third parties, in violation of [the loan agreement] and fail[ed] to notify Plaintiffs" that it had done so.  (*Id.* ¶ 9(N).)

In September 2010, Wells Fargo took over as servicing agent for Monument, but the same problems continued.  The loan was placed in foreclosure, payments were misapplied, the Shedds were reported delinquent to credit reporting agencies, mortgage interest was underreported on IRS Form 1098 for tax years 2010-13.  In addition, Wells Fargo "force-placed insurance . . . each year" even though the Shedds already had hazard insurance and had notified Wells Fargo of that fact. (¶ 17(F).)

Based on these facts, the Shedds have asserted the following claims:

| Count | Cause of Action | Defendants |
| --- | --- | --- |
| One | Breach of Contract | All |
| Two | Breach Covenant of Good Faith/Fair Dealing | All |
| Three | Breach of Fiduciary Duty | All |
| Four | Negligence | All |
| Five | Wantonness | Wells Fargo & Monument |
| Six | Fraud | All |
| Seven | Promissory Fraud | All |
| Eight | Fraudulent Suppression/Concealment | All |
| Nine | Unconscionability | All |
| Ten | Unjust Enrichment | All |
| Eleven | Conversion | All |
| Twelve | Injunctive Relief | All |
| Thirteen | Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 (RESPA) violation (Escrow Payments) | Wells Fargo & Monument |
| Fourteen | RESPA violation (Error Resolution/Info Requests) | Wells Fargo & Monument |
| Fifteen | RESPA violation (Force-Placed Hazard Insurance) | Wells Fargo & Monument |
| Sixteen | Truth in Lending Act , 15 U.S.C. § 1601 (TILA) & Regulation Z violation (Payment Crediting) | Wells Fargo & Monument |
| Seventeen | TILA/Regulation Z violation (Periodic Statements) | Wells Fargo & Monument |
| Eighteen | RESPA Violation (Loss Mitigation) | Wells Fargo & Monument |

**Issues Raised**

Wells Fargo and Monument (collectively, "the Defendants"), seek dismissal of Counts Two through Ten, Thirteen and Count Eighteen in their entirety and portions of Counts Thirteen through Fifteen. Below, the Court sets forth the applicable standard of review before addressing each of these claims.

**Standard of Review**

A complaint must "set forth a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court set forth the parameters of a well-pleaded complaint. A claim for relief "must set forth enough factual matter (taken as true) to suggest [the required elements of a cause of action]." *Id.* at 556; see also *Watts v. Florida Int'l University*, 495 F.3d 1289, 1295 (11th Cir. 2007) (applying *Twombly*). Furthermore, a complaint must "provide the defendant with fair notice of the factual grounds on which the complaint rests." *Jackson v. Bellsouth Telecommc'ns, Inc.*, 372 F.3d 1250, 1271 (11th Cir. 2004).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court further refined the threshold requirements for a claim under Rule 8(a)(2).

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the

> well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

*Iqbal*, 129 S.Ct. at 1949-50 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true." *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1232 (11th Cir. 2000)(per curiam). Conclusory allegations, however, are not. "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall,* 610 F. 3d at 709-10. Next, the court "should assume, on a case-by-case basis, that well pleaded factual allegations are true and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 710. Plausibility means something more than allegations that are "merely consistent with" liability. Iqbal, 129 S.Ct. at 1949. The facts alleged must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Legal Analysis**

**Breach of the Duty of Good Faith and Fair Dealing (Count Two)**

Defendants argue that this claim should be dismissed because no duty of good faith and fair dealing arose from the mortgage contract. Plaintiffs respond that Alabama law recognizes cause of action for breach of the duty of good faith and fair dealing arising from contract and argue that the Amended Complaint sufficiently alleges such a cause of action. Plaintiffs are correct that the cause of action exists; however, their factual allegations fall short.

6

Alabama recognizes that every contract carries an implied obligation of good faith and fair dealing, which has been defined as "an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth.*, 837 So. 2d 253, 267 (Ala. 2002) (quoting *Seller v. Head*, 261 Ala. 212, 217, 73 So.2d 747, 751 (1954)). The parameters of this claim have not been well defined.[1] However, it is clear that the obligation is not actionable unless the breach of that duty can be tied to the performance of a specific term of the contract. *Lake Martin/Alabama Power Licensee Assoc. v. Alabama Power Co., Inc.*, 601 So. 2d 942, 945 (Ala. 1992). More specifically, Alabama courts have recognized the duty of good faith and fair dealing when "the contract fails to specify all the duties and obligations intended to be assumed." *Lloyd Noland Found.,* 837 So.2d at 267. In those instances, "the law will imply an agreement to do those things that

---

[1] Alabama cases in which recovery on such a claim has been upheld are few. The only cases this Court has been able to locate involve employment contracts. In *Eager Beaver Buick, Inc v. Burt*, 503 So.2d 819 (Ala. 1987), *overruled on other grounds*, *Elmore Co. Comm'n v. Ragena*, 540 So.2d 720 (Ala. 1989), the employer (an automobile dealer) had insisted that the plaintiff (its sales manager) falsify documents so that the dealership could avoid sales tax, which would have been a violation of the law. The plaintiff refused, but the dealership's owners harassed him and made his job so difficult that he could not perform and ultimately resigned. The court held that the defendant breached its duty of good faith and fair dealing by making it impossible for the plaintiff to perform his duties under his employment contract. In *Hoffman-LaRoche, Inc. v. Campbell*, 512 So2d 725 (Ala. 1987), the Alabama supreme court upheld a jury verdict in favor of the plaintiff for breach of the duty of good faith and fair dealing. The plaintiff's employment contract provided that an employee could be discharged for failure to meet job requirements, and plaintiff was ostensibly terminated for that reason. But because the defendant, knowing plaintiff's physical limitations, gave him duties that were impossible to perform, the court found the duty of good faith included an implied or constructive condition precedent [for discharge] unsatisfactory performance, i.e. that he be physically able to satisfactorily perform." *Id.* at 738.

7

according to reason and justice the parties should do in order to carry out the purpose for which the contract was made." *Id.*

Plaintiffs argue that they have sufficiently alleged a breach of this duty with respect to the following specific contractual terms:

1. Defendants as the secured creditor or acting on its behalf under the mortgage loan were subject to particular terms of the mortgage loan, which included proper applications of Plaintiffs' payments under Paragraph 3 of the mortgage loan. . . .
2. Wells Fargo, based on additional promises made to Plaintiffs that the loan would be deemed current after showing it delinquent and initiating foreclosure, "induced Plaintiffs not to resort" to legal action on every occasion "set out above that Defendants promised Plaintiffs that Defendants would no longer breach the above contracts.
3. Plaintiffs were a third party beneficiary of Wells Fargo's Servicing contract with Monument.

(Pls.' Br. 11.)

The two latter arguments can easily be dismissed because neither point to any contractual provision that was breached by Defendants' alleged bad faith actions. The first argument does identify a specific contractual provision, but it is not the type of provision to which the duty of good faith and fair dealing applies. Although Plaintiffs above refer to "proper applications of the mortgage payments," the contract is actually very specific with respect to the allocation of mortgage payments.[2] Proper application is not left to the discretion of the Defendants; instead there is a specific order "in which payments on the loan would be applied" to principle, interest, escrow, late fees, etc. (Am. Compl. ¶ 6.) Failure to properly apply

---

[2] According to the Amended Complaint, the mortgage set forth the specific order in which payments on the loan would be applied to principle, interest, escrow, late fees, etc. (Am. Compl. ¶ 6.)

8

payments would be a violation of a specific contractual term, not a violation of the duty of good faith and fair dealing.

In sum, the Amended Complaint does not allege facts that would support a cause of action for breach of the duty of good faith and fair dealing under Alabama law. Accordingly, Plaintiffs' claims against Well Fargo and Monument in Count Two of the Amended Complaint are due to be dismissed.

**Breach of Fiduciary Duty (Count Three)**

Defendants point out that Alabama law generally does not recognize a fiduciary relationship between a lender and a borrower or a mortgagor and a mortgagee. *See, e.g., K & C Dev. Corp. v. AmSouth Bank, N.A.,* 597 So. 2d 671 (Ala. 1992); *Nettles v. First Nat. Bank of Birmingham*, 388 So. 2d 916 (Ala. 1980). An exception may arise, however, "when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances." *Baylor v. Jordan,* 445 So. 2d 254, 256 (Ala. 1984). In response, Plaintiffs argue that the Amended Complaint asserts facts giving rise to a "heightened, special relationship" between Plaintiffs and Defendants resulting in a fiduciary duty on Defendants' part. However, Plaintiffs fail to point out what those facts are. Alternatively, Plaintiffs argue that a motion to dismiss is premature because "[e]vidence of the special relationship of trust will be heightened beyond the current factual allegations as discovery unfolds." (Pls.' Br. 12, Doc. 27.)

To survive a motion to dismiss "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (citing 5 C. Wright & A.

9

Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004)). Unspecified allegations and the hope that evidence may be uncovered in discovery are not enough. Plaintiffs' breach of fiduciary duty claim against these Defendants is due to be dismissed.

### Tort Claims—Negligence, Wantonness & Fraud (Counts Four through Eight)

Defendants lump together Plaintiffs' claims for negligence, wantonness, fraud, promissory fraud, and fraudulent suppression/concealment and argue that all are due to be dismissed for either of two reason. First, they point out that "Alabama law does not recognize a tort-like cause of action for the breach of a duty created by contract." (Defs.' Br. 3.) (2) Alternatively, even if this principle does not apply,[3] they argue that Plaintiffs cannot recover for tortious conduct in the absence of physical injuries, immediate risk of physical injury or property damage." (*Id.* 5.) The persuasiveness of these arguments depends upon the claim or claims to which they are directed.

First, the arguments do not apply at all to Plaintiffs' fraud-based claims. These claims are based alleged misrepresentations outside the contract, not on any contractual duties or obligations. Likewise, Defendants' absence-of-damages argument holds no sway with respect to fraud claims because a plaintiff need only prove nominal damages to recover. *See, e.g., Life Ins. Co. of Georgia v. Smith*, 719 So. 2d 797 (Ala. 1998); *Wilson v. Draper*, 406 So. 2d 429, 432-33 (Ala. Civ. App. 1981).

---

[3] Defendants acknowledge that Wells Fargo was not a party to the contract from which the duties arose.

10

With regard to the negligence claim, the principle upon which Defendants rely is that "negligent failure to perform a contract . . . is but a breach of the contract." *Vines v. Crescent Transit Co.*, 264 Ala. 114, 119, 85 So.2d 436, 440 (1956). Thus, it is true that Monument cannot be held liable for negligent breach of its contract with Plaintiffs, but Wells Fargo was not a party to that contract. Alabama courts have held that "'[e]ven when a third party is not in privity with the parties to a contract and is not a third-party beneficiary to the contract, the third party may recover in negligence for breach of a duty imposed by that contract if the breaching party negligently performs the contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable.'" *Temploy, Inc. v. Nat'l Council on Comp. Ins.*, 650 F. Supp. 2d 1145, 1153 (S.D. Ala. 2009) (quoting *QORE, Inc. v. Bradford Bldg. Co., Inc.*, 25 So. 3d 1116, 1124 (Ala. 2009)).

Nevertheless, Plaintiffs have failed to state a negligence claim against either Defendant because there can be no recovery for negligence under Alabama law absent physical injury, an immediate risk of physical injury, or property damage. *See Wallace v. SunTrust Mortg., Inc.*, 974 F.Supp. 2d 1358, 1369-70 (S.D. Ala. 2013) (and cases cited therein). Physical injury, as defined by Black's Law Dictionary is "physical damage to a person's body." Black's Law Dictionary p. 906 (10th ed. 2009). Plaintiffs' allegations of "physical distress" and "physical discomfort" are insufficient.

Wantonness is a separate and distinct creature from negligence. *See Ex Parte Capstone Bldg Corp.*, 96 So. 3d 77, 85 (Ala. 2012) ("'[w]antonness is not merely a higher degree of culpability than negligence'"). Physical injury is not a prerequisite

for recovery. *Brown v. First Fed. Bank*, 95 So.3d 803, 818 (Ala. 2012). However, wantonness (like negligence) is not an alternative theory of recovery for breach of contract between two contracting parties. *See, e.g., Blake v Bank of North America*, 845 F.Supp. 2d 1206, 1210 (M.D. Ala. 2012) (dismissing negligence and wantonness claims because "Alabama does not recognize a tort-like cause of action for breach of a duty created by contract"). Consequently, Plaintiffs' wantonness claim against Wells Fargo survives, but their wantonness claim against Monument does not.

**Unconscionability (Count Nine)**

Although Defendants' motion to dismiss includes Count Nine as one of the counts due to be dismissed, neither the motion to dismiss nor the supporting brief asserts any grounds for dismissal. For that reason, the motion is denied.

**Unjust Enrichment (Count Ten)**

Defendants seek dismissal of Plaintiffs' unjust enrichment claim "due to the existence of a valid contract." (Defs.' Br. 9, Doc. 25.) "[U]njust enrichment is an equitable remedy only to be invoked when there is no available remedy at law." *Northern Assur. Co. of Am. v. Bayside Marine Constr., Inc.*, 2009 WL 151023 (S.D. Ala. Jan. 21, 2009); *see also American Family Care, Inc. v. Irwin*, 571 So.2d 1053, 1061 (Ala. 1990) ("Equity is a system of remedies that evolved to redress wrongs that were not recognized by or adequately righted by the common law.") Thus, it is true that breach of contract and unjust enrichment are mutually exclusive when both claims are based on the same set of facts. *See White v. Microsoft Corp*, 454 F.Supp.2d 1118, 1133-34 (S.D. Ala. 2006) (granting summary judgment on unjust enrichment claim where plaintiff also sought recovery on express warranty). And if the

existence of the contract is undisputed, then there is no reason for the unjust enrichment claim to proceed. *Id.* However, if the existence of an express contract is disputed, then the two claims may coexist as alternative theories of recovery. *See Kennedy v. Polar-BEK Baker Wildwood P'ship*, 682 So.2d 443 (Ala. 1996) (trial court properly submitted alternative theories of breach of contract and implied contract to jury).

The Amended Complaint refers to "contracts" that were "accepted by one or more Defendants," but there is no undisputed express contract involving either of these Defendants other than the mortgage loan agreement. And, as far as the Court can determine, only Monument is alleged to be a party to that contract. Therefore, to the extent the unjust enrichment claim and the breach the mortgage loan agreement claims overlap, the unjust enrichment claim against Monument is due to be dismissed. In all other respects, Defendants' motion to dismiss the unjust enrichment claim is denied.

**RESPA Claims (Counts Thirteen through Fifteen & Eighteen)**

The First Amended Complaint asserts several claims under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*, as amended by Pub.L. 11-203, 125 Stat. 1376 (the Dodd-Frank Wall Street Reform and Consumer Act or "Dodd-Frank"). Defendants raise two arguments, the first of which is not disputed. Defendants point out that claims arising more than three years prior to the filing of this action are time-barred under RESPA's three-year statute of limitations, 12 U.S.C. § 2614. Plaintiffs agree that they cannot recover for acts that occurred prior to July 3, 2011.

Defendants' second argument relates only to Counts Thirteen and Eighteen. Both of those counts, Defendants contend, are based on non-retroactive amendments to RESPA--§ 2605(k) and (l)--that were not in effect at the time of the events on which the claims are based. Before reaching that issue, the Court must address an additional hurdle, to-wit, Count Thirteen specifically alleges a violation of § 2605(g), which was in effect during the relevant time period. Nevertheless, Defendants argue, and the Court agrees, that the claim is not what it purports to be. The caption to Count Thirteen describes it as "RESPA—Failure to Make Timely Payments from Escrow" which would be a violation of § 2605(g), if facts were alleged to support that claim.[4] However, the gravamen Plaintiffs' claim in Count Thirteen is that "Wells Fargo purchased force-placed hazard insurance" even though "Plaintiffs provided proof . . of such hazard insurance" during the relevant time periods. (Am. Compl. ¶ 65.) This claim is governed by § 2605(k) and (l), Plaintiffs' labels notwithstanding. Subsection (k)(1) prohibits a loan service provider from, among other things, obtaining force-placed hazard insurance "unless there is a reasonable basis to believe that the borrower has [failed to do so]." 12 U.S.C. § 2605(k)(1)(A). Subsection (l) defines the requirements that must be met before a loan service provider can have a "reasonable basis" for that belief. Thus, Count Thirteen asserts a claim under § 2605(k) and (l) and does not assert a claim under § 2605(k). Count Eighteen does not invoke a specific subsection of § 2605, but

---

[4] That subsection provides: "If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due." 12 U.S.C. § 2605(g).

14

Plaintiffs do not contest Defendants' characterization of Count Eighteen as a claim under § 2605(k)(1)(E) of RESPA.[5]

Because Counts Thirteen and Eighteen allege violations of subsections (k) and/or (l) of section 2605, the Court must decide whether the events described took place after those subsections became effective. Subsections k, l, and m § 2605 were added as part of the "Mortgage Reform and Anti-Predatory Lending Act," (Title XIV of Dodd-Frank) and became effective January 10, 2014. *Berneike v. CitiMortgage, Inc.,* 708 F.3d 1141, 1146 (10th Cir. 2013). [6] The acts giving rise to the claims in Counts Thirteen and Eighteen took place prior to that date.

In summary, Counts Thirteen and Eighteen are due to be dismissed in their entirety. Furthermore, events alleged in Counts Fourteen and Fifteen that occurred

---

[5] That subsection makes it unlawful for a loan service provider to "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter. 12 U.S.C. § 2605(k)(1)(E). Count Eighteen asserts that the Defendants violated Regulation X implemented by the Consumer Finance Protection Board under the authority delegated by RESPA.

[6] Finding the effective date of these particular amendments is not an easy feat and requires careful sifting through the applicable legislation and regulations. First, the Mortgage Reform and Predatory Lending Act, has its own effective date found in Section 1400 of Dodd-Frank (unhelpfully entitled "Short Title Designations as Enumerated Consumer Law"). But one date does not apply to all. Instead, Section 1400(c) states "'a section, or provision thereof, of this title shall take effect on the date on which the final regulations implementing such section, or provision, take effect" or, if no regulations have been issued, "on the date that is 18 months after the designated transfer date." Pub.L. 111–203 §§ 1400(c), 1463, 124 Stat. 1376, 2183–84. The "transfer date" is July 21, 2011. *Berneike* 708 F.3d 1146 n. 3. The effective date would be January 21, 2013, unless a final regulation was issued before the date. In this case, it was. On January 17, 2013, the Consumer Finance Protection Bureau issued a final rule implementing the Dodd–Frank amendments to RESPA and amending Regulation X, with an effective date of January 10, 2014. *See* 78 Fed. Register 10696-01 Part I (E).

prior to July 3, 2011 are barred by the statute of limitations and are due to be dismissed.

**Conclusion**

For the reasons set forth above, the motion to dismiss is **granted** in part in part as follows:

> **Counts Two, Three, Four, Thirteen and Eighteen** are dismissed in their entirety;
> **Count Five** is dismissed only as to Monument;
> **Count Ten** is dismissed, in part;
> **Counts Fourteen** and **Fifteen** are dismissed, in part.

As to all other issues raised, the motion to dismiss is **denied**.

**DONE** and **ORDERED** this the 17th day of November, 2014.

> **s/***Charles R. Butler, Jr.*
> **Senior United States District Judge**