# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGE P. SHEDD, JR., *et al.*, | ) ) ) | |
| Plaintiffs. | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 14-00275-CB-M |
| WELLS FARGO HOME MORTGAGE, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## **AMENDED ORDER**

Defendant Barclays Capital Real Estate, Inc. has filed a Motion to Dismiss the First Amended Complaint for failure to state a claim upon which relief can be granted, along with a supporting brief. (Docs. 20 & 21.) Plaintiffs have filed a brief in response wherein they agree that some of the claims asserted against this Defendant are subject to dismissal but argue that the remaining claims are not.

**Procedural Background**

On May 9, 2014, Plaintiffs George P. Shedd, Jr. and Pamela J. Shedd ("the Shedds") filed a complaint in the Circuit Court of Mobile, Alabama against defendants Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), Monument Street Funding, II, LLC ("Monument"), and Barclays Capital Real Estate, Inc. ("Barclays"). The complaint asserted sought various state law causes of action and ought damages and injunctive relief against the Defendants in connection with the Shedds home mortgage on property located in Mobile, Alabama. The Defendants removed the action to this Court asserting removal jurisdiction based on diversity of

citizenship. Shortly after removal all Defendants filed motions to dismiss the complaint. Plaintiffs responded with an amended complaint, which expanded the factual allegations and added several causes of action. Defendants' renewed motions to dismiss followed.

**The Amended Complaint**

The First Amended Complaint ("the Amended Complaint") is based on events related to the servicing of the Shedds mortgage by the Defendants. In 2001, the Shedds signed a promissory note and executed a mortgage, secured by the residence in Mobile, Alabama, to The Mortgage Outlet. Barclays serviced the loan pursuant to a contract with The Mortgage Company. Barclays continued to service the loan after the loan and mortgage were assigned to Monument, which is owned by Wells Fargo, in 2007. In 2008, the Shedds filed a Chapter 11 plan of reorganization in the United States Bankruptcy Court for the Southern District of Alabama. Barclays, the loan servicer, represented to the bankruptcy court that it was the creditor and sought a relief from the automatic stay. In an order dated April 25, 2008, the bankruptcy court "noted that Barclays and Plaintiffs had entered into an adequate protection agreement" and that "Plaintiffs would pay Barclays their regular mortgage payment plus an additional $306.62 monthly, beginning with the April 2008 payment, and 'upon confirmation of the Plan of Reorganization, the terms of the confirmed plan shall control,' including 'the additional payment to be made HomeEq for purposes of paying out the pre-petition arrearage and charges.'" (Am. Compl. ¶ 7, Doc 17.) The bankruptcy court ultimately confirmed the reorganization plan, which required the

Shedds to pay the additional $306.62 for 60 months to satisfy the pre-petition arrearage of $16,500 in full.

The Shedds began paying the $306.62 as required, and continued to do so, but Barclays (and Monument) failed to apply the payments to the pre-petition arrearage as agreed. In September 2008, Barclays notified the Shedds the loan was in default, accelerated the debt and scheduled a foreclosure. "Throughout 2009 and in 2010 . . . Barclays continued to . . . wrongfully initiat[e] foreclosure proceedings; misallocate[e] payments [or refuse] payments . . . fail[ ] to properly credit mortgage interest, [incorrectly] report[ed] Plaintiffs to credit reporting agencies as delinquent. (*Id.* ¶ 9(M).) Also, in 2009 and in 2010, "Barclays . . . wrongfully disburs[ed] $3,576.3 for 'hazard insurance' to unknown third parties, in violation of [the loan agreement] and fail[ed] to notify Plaintiffs" that it had done so. (*Id.* ¶ 9(N).)

In September 2010, Wells Fargo took over as servicing agent for Monument, but the same problems continued. The loan was placed in foreclosure, payments were misapplied, the Shedds were reported delinquent to credit reporting agencies, mortgage interest was underreported on IRS Form 1098 for tax years 2010-13. In addition, Wells Fargo "force-placed insurance . . . each year" even though the Shedds already had hazard insurance and had notified Wells Fargo of that fact. (¶ 17(F).)

Based on these facts, the Shedds have asserted the following claims:

| Count | Cause of Action | Defendants |
|---|---|---|
| One | Breach of Contract | All |
| Two | Breach Covenant of Good Faith/Fair Dealing | All |
| Three | Breach of Fiduciary Duty | All |
| Four | Negligence | All |
| Five | Wantonness | Wells Fargo & Monument |
| Six | Fraud | All |
| Seven | Promissory Fraud | All |
| Eight | Fraudulent Suppression/Concealment | All |
| Nine | Unconscionability | All |
| Ten | Unjust Enrichment | All |
| Eleven | Conversion | All |
| Twelve | Injunctive Relief | All |
| Thirteen | Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 (RESPA) violation (Escrow Payments) | Wells Fargo & Monument |
| Fourteen | RESPA violation (Error Resolution/Info Requests) | Wells Fargo & Monument |
| Fifteen | RESPA violation (Force-Placed Hazard Insurance) | Wells Fargo & Monument |
| Sixteen | Truth in Lending Act, 15 U.S.C. § 1601 (TILA) & Regulation Z violation (Payment Crediting) | Wells Fargo & Monument |
| Seventeen | TILA/Regulation Z violation (Periodic Statements) | Wells Fargo & Monument |
| Eighteen | RESPA Violation (Loss Mitigation) | Wells Fargo & Monument |

**Issues Raised**

Barclays has moved to dismiss all claims against it for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Some of the issues raised in Barclays' motion to dismiss have been resolved by Plaintiffs' response. They agree that several of their claims against Barclays are barred by the statute of limitations. Thus, Plaintiffs' claims against Barclays for breach of fiduciary duty (Count Three), negligence (Count Four), fraud (Count Six), and promissory fraud (Count Seven) are due to be dismissed on statute of limitations grounds. The Court need not address the alternative grounds for dismissal asserted by Barclays with respect to those counts. Below, the Court sets forth the applicable standard of review before addressing each of the remaining claims.

**Standard of Review**

A complaint must "set forth a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court set forth the parameters of a well-pleaded complaint. A claim for relief "must set forth enough factual matter (taken as true) to suggest [the required elements of a cause of action]." *Id.* at 556; see also *Watts v. Florida Int'l University*, 495 F.3d 1289, 1295 (11th Cir. 2007) (applying *Twombly*). Furthermore, a complaint must "provide the defendant with fair notice of the factual grounds on which the complaint rests." *Jackson v. Bellsouth Telecommc'ns, Inc.*, 372 F.3d 1250, 1271 (11th Cir. 2004).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court further refined the threshold requirements for a claim under Rule 8(a)(2).

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

*Iqba*l, 129 S.Ct. at 1949-50 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

"When considering a motion to dismiss, all facts set forth in the plainitff's complaint 'are to be accepted as true." *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1232 (11th Cir. 2000)(per curiam). Conclusory allegations, however, are not. "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall,* 610 F. 3d at 709-10. Next, the court "should assume, on a case-by-case basis, that well pleaded factual allegations are true and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 710. Plausibility means something more than allegations that are "merely consistent with" liability. Iqbal, 129 S.Ct. at 1949. The facts alleged must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Legal Analysis**

    **Breach of Contract (Count One)**

Barclays argues that this count is due to be dismissed for three reasons: (1) the complaint fails to identify a contract between these parties and/or any specific contractual provision that was breached; (2) Plaintiffs have failed to support a breach of contract claim based on a third-party beneficiary theory; and (3) at least a portion of the breach of contract claim is barred by the Statute of Frauds. In response to the first argument, Plaintiffs point to allegations in the Amended Complaint that Barclays represented itself in bankruptcy court as a secured creditor and reached an agreement with Plaintiffs, confirmed by the bankruptcy court, to accept $306.62 over 60 months in payment of Plaintiffs' arrearages. Then, according to Plaintiffs, Barclays violated that agreement by, *inter alia*, failing to properly allocate those payments. These allegations are sufficient to state a breach of contract claim based on the Chapter 11 reorganization plan. *See Paul v. Monts*, 906 F.2d 1468 (10th Cir. 1990) (per curiam) (recognizing state law cause of action for breach of contract based on confirmed bankruptcy reorganization plan); *see also In re Arts Dairy, LLC*, 432 B.R. 712, 716 (Bankr. N.D. Ohio 2010)(confirmed plan of reorganization operates as a new and binding contract between debtor and creditors); *cf. In re Shenago Group*, 501 F.3d 338, 344 (3d Cir. 2007) ("In construing confirmed plan of reorganization, we apply contract principles.").

The next issue raised by Barclays is Plaintiffs' claim that they "were a third party intended beneficiary of Barclays' servicing contract with Monument." (Am. Compl. ¶ 23(A).) [1] Barclays argues that Plaintiffs have failed to allege facts to support a breach of contract claim based on a third-party beneficiary theory.

---

[1] The Amended Complaint does not state specifically how Barclays breached its loan servicing contract with Monument.

Plaintiffs respond that "discovery will reveal both the arrangement between Barclays and Monument and the surrounding circumstances related to it." (Pls.' Rsp. 10, Doc. 23.) As both parties recognize, under Alabama law it is well-settled that "[a] party claiming to be a third-party beneficiary, must establish that the contracting parties intended, upon execution of the contract, to bestow a *direct,* as opposed to an *incidental,* benefit upon the third party." *Cincinnati Ins. Cos. v. Barber Insulation, Inc.*, 946 So.2d 441, 443 (Ala. 2006) (internal quotation marks omitted). Plaintiffs' bare allegation that they are third-party intended beneficiaries of the Monument/Barclays servicing contract is precisely the type of factually unsupported legal conclusion that *Iqbal* and *Twombley* prohibit.

Barclays' final argument, quite possibly, is a non-issue. It relates to an allegation in the Amended Complaint that "Barclays, through its counsel, also promised that Plaintiffs would be deemed current on the loan." (Am. Compl. ¶ 12.) Barclays argues that this amounts to an oral agreement to forebear repayment of the loan and, as such, is barred by the Statute of Frauds, Ala. Code § 8-9-2(7) (1975), which requires that every agreement to delay or forbear repayment of money must be in writing. Plaintiffs counter that the statement is not an agreement to forbear repayment but a promise to show the loan as current, i.e., not in default. Furthermore, the Court does not read the Amended Complaint to assert a breach of contract claim based on this statement. Even assuming that it does, the Court finds

that the statement is susceptible to multiple interpretations[2] and declines to apply the Statute of Frauds at this stage.

In summary, the Amended Complaint sets forth a viable breach of contract claim based on Barclays' alleged breach of the bankruptcy reorganization plan. It does not state a viable breach of contract claim based on a third-party beneficiary theory. Finally, the Court rejects Barclays' argument for dismissal based on the Statute of Frauds.

**Breach of the Duty of Good Faith and Fair Dealing (Count Two)**

Barclays interprets this claim to be a claim for the tort of bad faith and argues that it is barred by the two-year statute of limitations applicable to torts and because Alabama has recognized the tort of bad faith only in relation to insurance contracts. In response, Plaintiffs argue that their claim for breach of the duty of good faith and fair dealing sounds in contract. The Alabama Supreme Court has recognized a bad faith claim under contract law for violation of a contract's express or implied obligation of good faith. *See Lake Martin/ Alabama Power Licensee Assoc., Inc. v. Alabama Power Co., Inc.,* 601 So. 2d 942, 944 (Ala. 1992). Therefore, Barclays' asserted grounds for dismissal are inapplicable.[3]

**Fraudulent Suppression/Concealment (Count Eight)**

Barclays argues that Plaintiff's fraudulent suppression claim fails because "Plaintiffs have failed to allege that Barclays had a duty to disclose, and have failed

---

[2] In the context of these facts, a promise to deem the loan current could also be a promise to correct the errors that placed the loan in default or, alternatively, as an admission that the loan was erroneously placed in default.

[3] Because Barclays has misinterpreted the claim, it has not challenged the sufficiency of Plaintiffs' *contractual* breach of the duty of good faith and fair dealing. The Court will not address a potential basis for dismissal that has not been raised.

to present any proof or argument as to the source of Barclays' duty to disclose." (Barclays' Br. 23, Doc. 21.) Plaintiffs acknowledge that the Count Eight does not specifically allege that Barclays had a duty to disclose, thought they contend that this is a typographical error and that "[t]he intent, as can be gleaned throughout this count is to assert the obvious—that all Defendants owed a duty to Plaintiffs." (Pls.' Br. 18-19.) Even assuming, *arguendo*, that Plaintiffs have pled the legal element, *i.e.*, that Barclays had a duty to disclose, they have failed to allege facts to support that claim.

Alabama law defines fraudulent suppression as "'[s]uppression of a material fact which the party is under an obligation to communicate. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.'" *State Farm & Cas. Co. v. Owen*, 729 So.2d 834, 837 (Ala. 1998) (quoting Ala. Code § 6-5-102 (1975)). In this case, the "material fact" allegedly suppressed by Barclays was its "wrongful sharing in a commission, payment kickback, fee or financial benefit when it force-placed insurance on Plaintiffs' property." (Pls.' Br. 18.) Plaintiffs contend that "special circumstances" include Barclays' involvement in the Chapter 11 plan and Barclays' failure to comply with the Chapter 11 agreement by force-placing hazard insurance. These alleged "special circumstances" are not specifically asserted in Count Eight, but even if they were they would not support a legal determination that Barclays had a duty to disclose. Whether special circumstances exist that give rise to a duty to disclose exists is a question of law. *Owen*, 729 So.2d at 839. Plaintiffs allege nothing more than the existence of a contract (the Chapter 11 plan) and Barclays alleged breach of

that contract (force-placing hazard insurance). These are not "special circumstances" that would impose on Barclays a duty to disclose. "When both parties are intelligent and fully capable of taking care of themselves and dealing at arm's length, with no confidential relationship, no duty to disclose exists when information is not requested, and mere silence is not a fraud." *Bank of Red Bay v. King*, 482 So.2d 274, 285-86 (Ala. 1985); s*ee also Surrett v. TIG Premier Ins. Co.*, 869 F.Supp. 919, 924-25 (M.D. Ala. 1994) (superior knowledge does not amount to special circumstances imposing a duty to disclose); *Owens*, 729 So.2d at 843 (relationship between insurer and insured not "special circumstance"); *Mason v. Chrysler Corp.*, 653 So.2d 951, 954-55 (Ala. 1995) (dealership's knowledge of recurring defect automobile model purchased by customer did not give rise to duty to disclose).

**Unconscionability (Count Nine)**

Barclays argues that no such cause of action exists, and Plaintiffs agree "that the affirmative cause of action for unconscionability does not allow for money damages." (Pls.' Br. 20.) They argue, however, that the Court may prevent an unconscionable result. Plaintiffs' argument is unavailing. A more accurate statement of the law is that "a court may rescind a contract, or a portion of a contract, for unconscionability." *Layne v. Garner*, 612 So. 2d 404, 408 (Ala. 1992). However, Plaintiffs do not seek rescission of the contract or a portion thereof. Other than damages, the only relief they seek is "cancellation of any remaining debt" (i.e., to be relieved of their duty to perform). Moreover, they do not claim that the *contract* was unconscionable. Instead, they allege that the Barclays (and the other

11

Defendants) *behaved* unconscionably by failing to comply with post-contractual promises and by failing to perform obligations under the contract. (Am. Compl. ¶ 49.) In sum, Count Nine fails to state a claim for relief of any kind.

**Unjust Enrichment (Count Ten)**

Barclays asserts two grounds for dismissal of Plaintiffs' unjust enrichment claim. First, Defendant contends that the claim is preempted by the existence of an express contract. "[U]njust enrichment is an equitable remedy only to be invoked when there is no available remedy at law." *Northern Assur. Co. of Am. v. Bayside Marine Constr., Inc.*, 2009 WL 151023 (S.D. Ala. Jan. 21, 2009); *see also American Family Care, Inc. v. Irwin*, 571 So.2d 1053, 1061 (Ala. 1990) ("Equity is a system of remedies that evolved to redress wrongs that were not recognized by or adequately righted by the common law.") Thus, it is true that breach of contract and unjust enrichment are mutually exclusive when both claims are based on the same set of facts. *See White v. Microsoft Corp*, 454 F.Supp.2d 1118, 1133-34 (S.D. Ala. 2006) (granting summary judgment on unjust enrichment claim where plaintiff also sought recovery on express warranty). Nevertheless, alternative theories of recovery may be presented to, and decided by, the trier of fact. *Kennedy v. Polar-BEK Baker Wildwood P'ship*, 682 So.2d 443 (Ala. 1996) (trial court properly submitted alternative theories of breach of contract and implied contract to jury). Dismissal is not appropriate merely because Plaintiffs have also asserted a breach of contract claim.

Barclays also argues that this claim arose out of a tort-like injury and is, therefore, time-barred under Alabama's catch-all two-year statute of limitations,

Ala. Code § 6-2-38(l) (1975). Both Barclays and Plaintiffs agree that the statute of limitations for an unjust enrichment claim is determined by the nature of the injury from which it arises. *See Auburn Univ. v. Int'l Bus. Mach. Corp.*, 716 F.Supp.2d 1114, 1117-1119 (M.D. Ala. 2010).[4] Barclays cites *Auburn University* but fails to apply the analysis; instead, it asserts that "[t]he court in [that case] found that the claim arose out of a tort injury. . . and that [t]he some conclusion would be reached in this case if there were no express contract." (Barclays' Br. 27.) As Plaintiffs point out, the unjust enrichment claim in *Auburn University* arose from an alleged patent conversion, a tort-based injury. In this case, the unjust enrichment theory is quasi-contractual based on Plaintiffs' assertion that Barclays took Plaintiffs' payments and misapplied them, essentially using the funds to Barclays' benefit. *See White*, 454 F.Supp.2d at 1133 n. 24 (unjust enrichment is a legal fiction used to create an implied contract). Therefore, Alabama's six-year statute of limitations applicable to breach of contract actions is applicable. *See* Ala. Code § 6-22-34(4) (actions founded on contract must be commenced within six years).

**Conversion (Count Eleven)**

---

[4]The statue of limitations applicable to unjust enrichment claims has not been definitively resolved. In *Snider v. Morgan,* 113 So.3d 643, 655 (Ala. 2012), the the Alabama Supreme Court stated:
> The court in *Auburn University* observed that "Alabama state courts have not decided whether unjust-enrichment claims are tort claims or implied-contract claims, much less which statute of limitations applies to such claims." Our research similarly confirms that there is a distinct absence of authority definitively stating the statute of limitations applicable to an unjust-enrichment claim. We need not, however, decide that issue here.

*Id.* (quoting *Auburn Univ.*, 716 F.Supp.2d at 1117).

Barclays contends that the conversion count is due to be dismissed because it fails to state a claim for the conversion of money. In *Hensley v. Poole*, 910 So.2d 96 (Ala. 2005), the Alabama Supreme Court explained the limitations of a conversion action when the conversion involves money:

> This Court has held repeatedly that " '[g]enerally, an action will not lie for the conversion of money' " unless " 'the money at issue is capable of identification.' " Only when money is "earmarked" or otherwise identifiable, such as enclosed in a container like a bag or chest, does an action lie for conversion of money. In *Lewis v. Fowler*, 479 So.2d 725, 726 (Ala.1985), this Court recognized, by reference to *Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 732 F.2d 859 (11th Cir.1984), that "money directly traceable to a special account"—in the *Limbaugh* case a "Ready Assets Trust Account"—is sufficiently identifiable to support an action for conversion. So long as accounts at financial institutions are "sufficiently segregated and identifiable," this Court will generally allow a conversion claim to proceed.

*Id.* at 101 (some internal citations omitted). Plaintiffs argue that the allegations of the Amended Complaint are sufficient because they allege that "payments were directly traceable to a particular account" and involve "specific money paid by Plaintiffs. . . on particular dates [which are set out in the Amended Complaint]." (Pls.' Br. 24.) The phrase "directly traceable to a particular account" is a legal conclusion. Moreover, the ability to trace specific payments says nothing about how those payments are held. Because the Amended Complaint does not identify a "segregated and identifiable account" such as an escrow or trust account, it does not support a claim for conversion.

**Request for Injunctive Relief (Count Twelve)**

In Count Twelve, Plaintiffs have asserted their request for injunctive relief, including "[a] immediate order" requiring Defendants to provide a full accounting of Plaintiffs' mortgage payments and to provide (no later than July 15, 2014) revised

14

1098 tax forms to properly credit Plaintiffs with mortgage interest. (Am. Compl, Count XII ¶ 1.) In addition, Plaintiffs seek "a temporary restraining order, to be followed by a preliminary, and then a permanent injunction, enjoining Defendants from" making reports to credit agencies, providing 1098 former making any representation about Plaintiffs' mortgage loan account without prior approval of the Court. (*Id.* ¶ 4.) In their briefs, neither Barclays nor Plaintiffs make any distinction among the types of injunctive relief sought—temporary restraining order (TRO), preliminary injunction or permanent injunction—though their arguments appear to address a motion for preliminary injunction.[5]

> The requirements for obtaining a preliminary injunction are well settled:
>
> A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. In this Circuit, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' " as to each of the four prerequisites.

*Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (internal citations omitted).

"A showing of irreparable injury is 'the sine qua non of injunctive relief,'" and its absence "make[s] preliminary injunctive relief improper." *Id.* Plaintiffs argue that they will be irreparably harmed because they "may not be able to resolve their poor credit rating" resulting from Barclays actions giving rise to their claims. (Pls.' Br. 27.) But the threat of injury must be "real and immediate" rather than "merely

---

[5] Plaintiffs filed the Amended Complaint on July 3, 2014 but did not pursue their request for a TRO.

15

conjectural or hypothetical." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994). The possibility that Plaintiffs may not be able to resolve their poor credit rating is conjecture. The injury to Plaintiffs' credit rating has already been inflicted, and there is no reason to believe that an immediate injunction would be more likely to "resolve their poor credit rating" than one entered after a trial on the merits. In sum, Plaintiffs are not entitled to preliminary injunctive relief.

**Conclusion**

Defendant Barclays motion to dismiss is due to be and hereby is **GRANTED**, in part, as to Plaintiffs' Breach of Contract based on third-party beneficiary theory (Count One), Breach of Fiduciary Duty (Count Three), Negligence (Count Four), Fraud (Count Six), Promissory Fraud (Count Seven), Fraudulent Suppression/Concealment (Count Eight), Unconscionability (Count Nine), and Conversion (Count Eleven). The motion is **DENIED,** as to Plaintiffs' claim for Unjust Enrichment (Count Ten) and **DENIED**, in part, as to Plaintiffs' claims for Breach of Contract claim based on violation of the bankruptcy plan of reorganization (Count One) and Breach of the Duty of Good Faith and Fair Dealing (Count Two). Plaintiffs' request for preliminary injunctive relief is **DENIED**, and their request for a temporary restraining order is **MOOT**.

**DONE** and **ORDERED** this the 17th day of November, 2014, *nunc pro tunc* the 15th day of October, 2014.

                                        **s/***Charles R. Butler, Jr.*
                                        **Senior United States District Judge**