IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GEORGE P. SHEDD, JR., *et*          )
*al.*,                              )
                                    )
                    Plaintiffs.     )
                                    )        CIVIL ACTION NO.
v.                                  )        14-00275-CB-M
                                    )
WELLS FARGO HOME                    )
MORTGAGE, INC., *et al.*,           )
                                    )
                    Defendants.     )

## ORDER

This matter is before the Court on a Motion to Dismiss the Second Amended Complaint filed by defendants Wells Fargo Home Mortgage, Inc. and Monument Street Financing, II, LLC, Plaintiffs' response, and Defendants' reply.  (Docs. 84, 91, & 100.)  After due consideration of all issues, the Court finds the motion is due to be granted, in part, and denied, in part.

### I.  Procedural Background

In the immortal words of the late Yogi Berra:  "It's déjà vu all over again."  In November 2014, the Court entered an order granting, in part, and denying, in part, the Defendants' motion to dismiss the First Amended Complaint (FAC).  (Doc. 34.)  Some causes of action were dismissed in their entirety (*e.g.,* breach of the covenant of good faith and fair dealing, breach of fiduciary duty, negligence, and some RESPA claims).  Others were dismissed in part (*e.g.,* wantonness, unjust enrichment, other RESPA claims).  After some discovery, the Magistrate Judge stayed this action and held a settlement conference.  The case did not settle, and a new deadline for

amending pleadings was set.  Plaintiffs filed a motion for leave to file a Second Amended Complaint (SAC).  (Doc. 68.)  The motion for leave to amend was granted without objection.  (Doc. 73.)  The most recent complaint, like the previous one, is based on events related to the servicing of the Shedds' mortgage by the Defendants and contains substantially the same causes of action, including those that were dismissed.[1]

## II.  The Second Amended Complaint

The SAC provides greater factual detail than the FAC but does not alter the basic outline of events giving rise to Plaintiffs' causes of action, with one exception. The FAC alleged that both George Shedd and Pamela Shedd signed the promissory note that is the basis of this action.  The SAC, however, alleges that only Pamela Shedd signed the promissory note, although both George Shedd and Pamela Shedd signed the mortgage on the family residence that secured the promissory note. Those documents were executed in 2001.

Defendant Barclays Capital Real Estate, Inc. (Barclays) initially serviced the loan and continued to do so after it was assigned to Monument Street Financing II, LLC (Monument).  Loan payments fell behind, and in 2008 the Shedds filed a Chapter 11 bankruptcy petition in this district.  Barclays, the loan servicer, represented to the bankruptcy court that it was the creditor and sought a relief from the automatic stay.  On April 25, 2008, the bankruptcy court entered an order

---

[1]The primary distinction between the two complaints is length.  The FAC was 65 pages (including "only" 20 pages of facts).  The SAC is 151 pages (including 70 pages of facts).  The problems caused by this inflated pleading was discussed with the parties in a conference call, and the Court has fashioned a remedy that will permit Defendants to file an answer without having to address each factual allegation in the SAC. (Doc. 102.)

finding the parties had entered into an adequate protection agreement that required the Shedds to pay their regular mortgage payment plus an additional $306.62 monthly beginning with the April 2008 payment.  Subsequently, the bankruptcy court confirmed the reorganization plan, which required the Shedds to pay the additional $306.62 for 60 months to satisfy in full a pre-petition arrearage of $16,500.

Barclays used a software package from a third party vendor that was not equipped to handle bankruptcy payments.  As a result, payments made by the Shedds after April 2008 were mishandled.  For example, payments that should have been applied to the arrearage were held in suspense or rejected; payments that should have been applied to current monthly loan payments were applied to past due amounts, fees and expenses.  Not surprisingly, Barclays' inability to correctly apply the payments created a nightmare for the Shedds--the loan was placed in default, foreclosure proceedings were initiated, various fees were added, their mortgage interest was misreported, the Shedds credit suffered.  For more than two years, the Shedds worked with Barclays to correct the problem, but it was never resolved.

On September 1, 2010, Monument transferred servicing to defendant Wells Fargo Home Mortgage, Inc. (Wells Fargo).[2]  However, Wells Fargo used the same

---

[2] The SAC alleges, somewhat confusingly, that Wells Fargo Home Mortgage, Inc. is a "division" of Wells Fargo Bank, N.A. and also alleges that "Wells Fargo presently services the mortgage loan as Wells Fargo Home Mortgage, Inc. (sometimes hereafter referred to as WFHM)."  (SAC ¶ 4.)  Wells Fargo Bank, N.A. is not named as a defendant in this action.

software vendor as Barclays, and the problems persisted.[3]  The Shedds, sometimes

through their counsel, communicated repeatedly with Wells Fargo about the

misapplication and rejection of payments as a result of the bankruptcy plan.  In

letters dated December 9, 2010 and November 21, 2011, Wells Fargo acknowledged

that payments had been wrongly rejected and made promises to correct the

problem.  Nevertheless, the misapplication of payments continued. Wells Fargo's

records do not accurately reflect the payments made by the Shedds.  Wells Fargo has

incorrectly reported the amount of annual mortgage interest paid by the Shedds and

has made erroneous reports to credit reporting agencies regarding the status of

their account.  Wells Fargo improperly released the account to collections and has

caused collections calls to be made to the Shedds.

  Plaintiffs' claims arising from these events are set forth on the following

chart:

| Count | Cause of Action | Defendants |
|-------|-----------------|------------|
| One | Breach of Contract | All |
| Two | Breach of Duty of Good Faith & Fair Dealing | All |
| Three | Breach of Fiduciary Duty | Wells Fargo |
| Four | Wantonness | Wells Fargo |
| Five | Fraud | Wells Fargo |

---

[3] Wells Fargo had used the vendor before and knew of the problems vendor's loan servicing software.

| Six | Promissory Fraud | Wells Fargo |
| Seven | Fraudulent Suppression/Concealment | Wells Fargo, Barclays |
| Eight | Unconscionability | All |
| Nine | Unjust Enrichment | Wells Fargo, Barclays |
| Ten | Accounting | Wells Fargo, Barclays |
| Eleven | RESPA §2605(m) | Wells Fargo |
| Twelve | RESPA § 2605(e) | Wells Fargo |
| Thirteen | FCRA | Wells Fargo |
| Fourteen | TILA | Wells Fargo, Monument |
| Fifteen | TILA | Wells Fargo, Monument |
| Sixteen | FDCPA | Wells Fargo, Monument |

### III.  Legal Analysis

Wells Fargo and Monument have moved to dismiss each cause of action against them for failure to state a claim upon which relief can be granted. [4]  In addition, these Defendants allege that Plaintiff George Shedd lacks standing to assert a claim for breach of contract or a claim under RESPA, TILA, or FDCPA. Defendants also move to dismiss fictitious parties from this action.  Below, the Court addresses fictitious parties and the standing issue before tackling Defendants' arguments with respect to each cause of action.

_____

[4] The standard for reviewing a Rule 12(b)(6) motion to dismiss was set forth in the Court's November 17, 2014 order (Doc. 34) and need not be repeated in detail here.  Suffice it to say, facts pleaded in the complaint are taken as true but conclusions are not.  *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).   A court must take the factual allegations as true and determine whether they plausibly give rise to a claim for relief.  *Id.* at 710.

**A. Fictitious Parties**

"As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).  Plaintiffs do not dispute this proposition.  Fictitious parties shall be dismissed.

**B. George Shedd's Standing**

Defendants argue that George Shedd does not have standing to pursue a state law claim for breach of contract or federal claims under RESPA, TILA, or FDCPA because he did not sign, and therefore was not obligated to repay, the promissory note.  In response, Plaintiffs argue that George Shedd was a party to the Chapter 11 Plan that "created a new contract between George and the Defendants *related to the mortgage.*"  (Pls.' Rsp. 8, Doc. 91, emphasis added.)  Alternatively, at least with respect to the breach of contract claim, Plaintiffs argue that George Shedd was a third-party beneficiary of the Chapter 11 Plan because the Plan allowed him to stay in the family home as long as the payments were made as required.  Neither of these theories, if proven, demonstrates standing.

To establish standing to sue under either federal or state law, a plaintiff must prove that he himself has suffered an actual or threatened injury to a legally protected right.  *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975); *Bernals, Inc. v. Kessler-Greystone, LLC,* 70 So.3d 315, 319 (Ala. 2011).  Plaintiffs assert that "George has suffered injuries as mortgagor by Wells Fargo Defendants adding unnecessary costs; withholding escrow; suspending and refusing to make timely payments to reduce the mortgage debt; interfering with his ability to refinance at a much lower interest rate; not providing the proper Form 1098 mortgage interest deductions for

the taxes he files each year; and other [unspecified] damages." (Pls.' Rsp. at 8.)  Each

of these injuries relates to and arises from the obligation of the *borrower* to pay

principal, interest, and fees under the promissory note.

George Shedd is not a borrower under the note, and the Chapter 11 Plan did

not change that fact.  First, George Shedd's designation as "Borrower" under the

mortgage does not make him a borrower under the promissory note.  The mortgage

itself specifically precludes that possibility:

> Any borrower who co-signs this Security Instrument but does not
> execute the Note (a) is co-signing this Security Instrument only to
> mortgage, grant and convey that Borrower's interest in the Property
> under the terms of this Security Instrument; (b) *is not personally
> obligated to pay the sums secured by this Security Instrument*; and (c)
> agrees that Lender and any other Borrower may agree to extend
> modify, forbear or make any accommodations with regard to the
> terms of this Security Instrument or the Note without the Borrower's
> consent.

(Ex. A., Wells Fargo Defs.' Mot. to Dismiss FAC, Doc 15-1, emphasis added.)  The

Chapter 11 Plan could not and did not modify George Shedd's obligations under the

Note because he had none. [5]

Plaintiffs argue that George Shedd *became* a "borrower" as a result of the

proceedings in the bankruptcy court.  Specifically, Plaintiffs state that George Shedd

"was an obligated Chapter 11 debtor under the April 2008 Agreed Order and the

July 2008 confirmed Chapter 11 Plan," which required the "debtors" to pay $306.62

---

[5]Furthermore, as Defendants point out, the bankruptcy code prevents a
bankruptcy court from modifying the terms of a loan secured by a mortgage on
debtor's primary residence.  11 U.S.C. § 1123(b)(5).  This anti-modification
provision does, however, allow a plan to "cure" an arrearage, which was the purpose
of the $306.62 payments.  *See In re Litton*, 330 F.3d 636, 644-45 (interpreting
Chapter 13's antimodification provision).

per month to cure the arrearage.  (Pl.'s Resp. 9, Doc. 91.)   But that arrearage was related to the note, which was solely the debt of Pamela Shedd.  Even though a husband and wife file a joint bankruptcy petition, their estates remain separate.  *In re Olien*, 256 B.R. 280, 283 (Bankr. E.D. Tenn. 2000); 11 U.S.C. § 302.  Unless the bankruptcy court ordered the estates consolidated (and there is no allegation here that it did), "'joint administration has no impact on the legal rights of the Debtor, Creditors, or the Trustee.'"  *Id.* (quoting *In re Cash*, No. 91-60968, 1994 WL 732826, *2 (Bankr. N.D. Ohio Dec. 15, 1994)).  Thus, the bankruptcy court could not have created a legal right in favor of the creditor where none existed.   Despite the references to "debtors" in relation to payment of the arrearage, the Agreed Order and the confirmed Plan did not create an obligation on the part of George Shedd to pay a debt that was not his.

George Shedd has no standing to pursue a breach of contract claim because he has not alleged damage resulting from a contract to which he was a party.[6]  Likewise, he has no standing to sue under RESPA, TILA, or FDCPA.  RESPA provides that "[w]hoever fails to comply with any provision of this section shall be liable to the *borrower*."  12 U.S.C. § 2605(f) (emphasis added).  TILA and FDCPA protect "consumers" from certain practices by lenders and debt collectors.  *See Johnson v. Ocwen Loan Servicing,* 374 Fed. Appx. 868, 874 (11th Cir. 2010) (plaintiff who was not a party to loan had no standing to sue under RESPA, TILA or FDCPA); *Coleman v. IndyMac Venture, LLC*, 966 F.Supp.2d 759 (W.D. Tenn. 2013) (husband who signed deed of trust but did not sign promissory note lacked standing under FDCPA); *cf.*

---

[6] George Shedd was a party to the mortgage contract, but all damages asserted arise from alleged breaches of the Note.

*Tower v. Moss,* 625 F.2d 1161, 1166 (5th Cir. 1980) (TILA's disclosure requirements apply to consumer credit transactions "'in which the party to whom credit is offered is a natural person'").

## C. Breach of Contract (Count One)

Defendants raise two types of arguments with respect to the breach of contract claim.  First, they argue that Wells Fargo cannot be held liable for breach of contract because the facts alleged in the SAC do not support the legal conclusion that it entered into a contract with Plaintiffs.[7]  One of the fundamental requirements of a breach of contract claim is "'the existence of a valid contract binding the parties in the action.'"  *Webb v. Ocwen Loan Servicing, LLC*, No. 11-00732-KD-M, 2012 WL 5906729, *8 (S.D. Ala. Nov. 26, 2012) (quoting *Poole v. Prince*, 61 So.3d 258, 274 (Ala. 2010)).  Plaintiffs point to paragraph 40 of the SAC as support for the existence of a valid contract between Plaintiffs and Wells Fargo, but that paragraph alleges only that Wells Fargo "acquired the loan servicing effective September 1, 2010." Based on that allegation and Wells Fargo's actions as servicer (*e.g.*, letters regarding the debt, acknowledgements that it had failed to comply with bankruptcy Plan), Plaintiffs contend they have pled facts to support the existence of a contract between themselves and Wells Fargo.   However, the existence of a valid contract entails: " 'an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.' " *Webb,* at *8 (citations omitted).  *Wallace v. SunTrust Mortgage, Inc*., 974 F. Supp. 2d 1358, 1368 (S.D. Ala. 2013) (quoting *Shaffer v. Regions Financial Corp*., 29 So. 3d 872, 880 (Ala.2009)). Wells Fargo

---

[7] Plaintiffs concede that they cannot rely on a third-party beneficiary theory to establish a breach of contract claim against Wells Fargo.

entered the picture as a mortgage servicer in 2010, years after the contracts on which the Plaintiffs rely—the Note and the Chapter 11 Plan—were entered into. Plaintiffs factual allegations do not explain how Wells Fargo could have entered into a valid contract that predated Wells Fargo's involvement in the servicing of Plaintiffs' loan.  Therefore, Plaintiffs' breach of contract claim against Wells Fargo is due to be dismissed.

Defendants also argue that the SAC does not support a breach of contract claim against either Wells Fargo or Monument because Plaintiffs have failed to allege facts that would demonstrate a breach of any contractual provision.  That argument requires factual analysis that is unsuited for a motion to dismiss.

**D. Breach of Contractual Duty of Good Faith & Fair Dealing (Count Two)**

Plaintiffs' claim for breach of the duty of good faith and fair dealing as set forth in the FAC was dismissed for failure to state a claim.  Plaintiffs argue that the SAC has supplied the necessary facts to support a cause of action.  This Court previously set out the law regarding this claim as follows:

> Alabama recognizes that every contract carries an implied obligation of good faith and fair dealing, which has been defined as "an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth.*, 837 So. 2d 253, 267 (Ala. 2002) (quoting *Seller v. Head*, 261 Ala. 212, 217, 73 So.2d 747, 751 (1954)).  The parameters of this claim have not been well defined. However, it is clear that the obligation is not actionable unless the breach of that duty can be tied to the performance of a specific term of the contract. *Lake Martin/Alabama Power Licensee Assoc. v. Alabama Power Co., Inc.*, 601 So. 2d 942, 945 (Ala. 1992).  More specifically, Alabama courts have recognized the duty of good faith and fair dealing when "the contract fails to specify all the duties and obligations intended to be assumed." *Lloyd Noland Found.*, 837 So.2d at 267. In those instances, "the law will imply an agreement to do those things that according to reason and

10

> justice the parties should do in order to carry out the purpose for
> which the contract was made." *Id.*

(Order dated Nov. 17, 2014 at 7-8, Doc. 34.)

In response to Defendants' motion to dismiss, Plaintiffs have failed to point to any allegation in the SAC that would tie their claim to any specific contractual term. Instead, they point to allegations that the Defendants failed to comply with *implied* requirements of the Chapter 11 Plan that they bring the loan current and that they create a separate arrearage account.  Because Plaintiffs' SAC does not allege a breach of duty related to any specific contractual term, their claim for breach of implied duty of good faith and fair dealing is due to be dismissed.

**E. Breach of Fiduciary Duty (Count Three)**

Wells Fargo, the only defendant against whom the breach of fiduciary duty claim is asserted, argues that the facts alleged in the SAC do not give rise to a fiduciary relationship between Plaintiffs and Wells Fargo.   Under Alabama law, "[the] relationship between a bank and its customer  [is considered] . . . a creditor-debtor relationship that does not impose a fiduciary duty on the bank."  *K & C Dev. Corp. v. AmSouth Bank, N.A.*, 597 So. 2d 671, 675 (Ala. 1992).  Since the relationship between a debtor and a mortgage servicer is nearly identical to that of creditor-debtor, the same rule logically extends to the debtor-mortgage servicer relationship. *Selman v. CitiMortgage, Inc.*, No. 12-0441, 2013 WL 838193, *10 (S.D. Ala. March 5, 2013).  Alabama law does recognize, however, that a fiduciary relationship might arise if the facts demonstrate a special relationship between the parties.  *K & C Dev.*, 597 So. 2d at 675.  For example, one who occupies a position of trust or who

"purports to act or advise with the other's interest in mind" and "thereby gains an influence or superiority over the other" is considered to be a fiduciary.

Plaintiffs contend that this case does not involve a typical debtor-mortgage servicer relationship and that the circumstances created a special relationship between Plaintiffs and Wells Fargo. In support of this contention, they cite letters and telephone calls from Wells Fargo to Plaintiffs threatening to accelerate the debt and to foreclose, which resulted in Plaintiffs' "counsel warn[ing] Wells Fargo that [Plaintiffs] would sue if Wells Fargo took such steps." (Pl.'s Resp. Br. 16, Doc. 91.) Plaintiffs also point out Wells Fargo's acknowledgement of numerous mistakes in servicing their account and its many broken promises to fix the problems. All of these facts relate to the Wells Fargo's servicing of the mortgage and do not show that Wells Fargo had a special relationship with Plaintiffs. To the contrary, that Plaintiffs dealt with Wells Fargo through counsel belies any assertion that Wells Fargo occupied a position of trust, influence, or superiority. This claim is due to be dismissed.

**F. Wantonness  (Count Four)**

Count Four of the SAC alleges that Wells Fargo acted wantonly in that it promised to keep the bankruptcy workstation open so that it could accept payments and stop the collection calls to Plaintiffs but instead:

- Reported Plaintiffs as delinquent to credit reporting agencies,
- Continued collection calls,
- Failed to keep the bankruptcy workstation open,
- Continued to misallocate payments and assess fees,
- Improperly reported mortgage interest deductions on Plaintiffs' 198 forms
- Failed to properly apply payments
- Wrongfully force-placed hazard insurance in excessive amounts

- Caused other damages as detailed above

(SAC ¶79.) Wells Fargo points out that Alabama law does not recognize a cause of action for wanton mortgage servicing where the alleged injury is purely economic. Plaintiffs do not disagree with that legal proposition but argue that they pleaded noneconomic damages (emotional distress) by incorporation.  In addition to its reference to "other damages set out above,"[8] Count Four includes a demand for damages for emotional distress.  Thus, the Court finds the pleading sufficient.

The current state of the law in Alabama regarding wantonness claims against a mortgage servicer has been summed up as follows:

> "[N]umerous recent authorities have held that Alabama law does not recognize a cause of action for negligent or wanton servicing of a mortgage *that results in economic damages. . . .*"

> "To be sure, this line of cases leaves open the possibility of a cognizable claim for negligent/wanton mortgage servicing in cases involving personal injury or property damage."  . . .  Givens points out that she has alleged, and presented evidence of, personal injury in the form of mental anguish. However, "[t]his allegation does not save [her negligence claims] by bringing 'personal injury' damages into play. After all, Alabama law forbids '[d]amages for mental anguish ... for negligence except when the plaintiff has suffered a physical injury as a result of the negligent conduct or was placed in an immediate risk of physical injury by that conduct.' . . . [Givens]'s allegations in h[er] pleading do not satisfy this threshold, and [s]he has identified no evidence in the summary judgment record that would do so; therefore, mental anguish damages are unavailable with respect to [her negligence claims]." . . .

> Wantonness, however, is a separate issue. The Alabama Court of Civil Appeals recently held that while proof of physical injury or being placed in immediate risk of physical injury is required to recover mental anguish damages on a claim for negligence, such proof is not required for mental anguish damages on a wantonness claim.

---

[8] In the "Facts" portion of the SAC, Plaintiffs assert that Wells Fargo's actions caused Plaintiffs "great distress, great emotional and mental anguish and upset." (SAC ¶ 55.)

*Givens v. Saxon Mortgage Servs., Inc.*, Civil Action No. 13-00245-KD-N, 2014 WL 2452891, at *13-15 (S.D. Ala. June 2, 2014) (DuBose, J.) (quoting *Quinn v. Deutsche Bank Nat. Trust Co.*, Civil Action No. 13–0115–WS–C, 2014 WL 977632, at *6 (S.D. Ala. Mar. 12, 2014) (Steele, C.J.)) (emphasis added) (internal quotations and citations omitted).

As Judge Steele noted in *Quinn*, "this line of cases leaves open the possibility of a cognizable claim for negligent/wanton mortgage servicing in cases involving personal injury or property damage." *Id.* *6 "n. 17. And as Judge DuBose subsequently found in *Givens,* proof of mental anguish may be sufficient evidence of personal injury to support a claim for wantonness.[9] *Id.* Plaintiffs in this case have asserted a claim for wantonness supported by factual allegations of mental anguish. This is sufficient to state a claim.

### G. Fraud & Promissory Fraud (Counts Five & Six)

Although Wells Fargo asserts several grounds for dismissing Plaintiffs' fraud and promissory fraud claims, the Court need address only one. Wells Fargo argues that Plaintiffs have failed to adequately plead an essential element of both claims— detrimental reliance.[10]

> The law of fraud is well-settled. An essential element of any fraud
> claim is that the plaintiff must have reasonably relied on the alleged

---

[9] In that case, which was before the court on summary judgment, the court found that Givens had failed to present sufficient evidence demonstrating an issue of fact as to whether the defendant acted wantonly in servicing her mortgage. *Givens*, 2014 WL at *16.

[10] Actually, detrimental reliance is two elements—reasonable reliance and damages proximately caused by that reliance.

> misrepresentation. Section 6–5–101, Ala.Code 1975, provides that
> "[m]isrepresentations of a material fact made willfully to deceive, or
> recklessly without knowledge, and acted on by the opposite party ...
> constitute legal fraud." Thus, reliance in the form that the
> misrepresentation is "acted on by the opposite party" is an essential
> element of fraud in Alabama.

*Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 4 (Ala. 2004) (some internal quotations

omitted).  Moreover, "'[w]here a plaintiff seeks to recover because of the fraud of the

defendants, based upon false representations, it is incumbent upon him to allege

and prove what representations were made, that they were false, that he believed

them to be true, and that he relied and acted upon them to his detriment.' " *Id.*

(quoting with approval *Nichols v. Kansas Political Action Comm.*, 270 Kan. 37, 53, 11

P.3d 1134, 1146 (2000)).  "It is fundamental to an action for fraud that the plaintiff

must have relied to his detriment on the alleged misrepresentation. In the absence

of proof of reliance, a plaintiff's fraud claim must fail as a matter of law."

*Sanders v. Kirkland & Co.,* 510 So. 2d 138, 142 (Ala. 1987) Detrimental reliance is

also essential to a claim of promissory fraud.  *See Wade v. Chase Manhattan Mortg.*

*Corp.*, 994 F. Supp. 1369, 1379 (N.D. Ala. 1997) (promissory fraud requires proof of

four elements of fraud plus two additional elements).

Plaintiffs' allegation of detrimental reliance falls short. Plaintiffs make only

one assertion regarding their reliance on Wells Fargo's alleged misrepresentations:

"Wells Fargo intended that Plaintiffs rely on the above false statements, which they

reasonably did to their detriment, *in continuing to make monthly payments to Wells*

*Fargo*[.]"  (SAC ¶ 88, emphasis added.)[11] This allegation is insufficient to support

recovery for fraud because those monthly payments were required by the

promissory note and the Chapter 11 Plan.  "A representation in an arm's length

transaction that causes a person to do nothing more than he was legally obligated to

do without such a representation being made, is not material and therefore cannot

constitute actionable fraud."  *Reeves v. Porter*, 521 So. 2d 963, 967 (Ala. 1988).

Stated differently, "'[a] person who is induced by false representations to do what

his legal duty requires him to do cannot recover therefor, because he suffers no legal

injury.'"  *Id.* (quoting 37 Am.Jur.2d Fraud and Deceit, § 283, at 379 (1968)).  Because

the facts alleged do not support Plaintiffs' assertion that they relied on the alleged

misrepresentations to their detriment, Plaintiffs have failed to state a claim for fraud

or a claim for promissory fraud.

**H. Fraudulent Suppression (Count Seven)**

Plaintiffs' fraudulent suppression claim fails for a different reason, that is, a

party cannot be held liable for suppressing information it had no duty to disclose.

> The first element of a fraudulent suppression claim requires
> the showing of a duty to disclose.  "In the absence of special
> circumstances, Alabama law considers the lender-borrower
> relationship to be arms-length and does not place a duty of disclosure
> on the lender."

*Branch Banking & Trust Co. v. EBR Investments LLC*,  Civil Action No. 2:14-C-V01578-

WMA, 2015 WL 225457, at *3 (N.D. Ala. Jan. 16, 2015) (quoting *Buckentin v.*

*SunTrust Mortgage Corp.*, 928 F.Supp.2d 1273, 1285 (N.D.Ala.2013)).  "When both

---

[11] In their cause of action for promissory fraud, Plaintiffs allege no specific
facts regarding reliance, stating only "Plaintiffs reasonably relied upon the above
representations to their detriment, as detailed above[.]"  (SAC ¶ 92.)

parties are intelligent and fully capable of taking care of themselves and dealing at arm's length, with no confidential relationship, no duty to disclose exists when information is not requested, and mere silence is not a fraud." *Bank of Red Bay v. King*, 482 So. 2d 274, 285-86 (1985).   The relationship of Plaintiffs and Wells Fargo is akin to that of lender-borrower; therefore, Plaintiffs must plead facts from which a special relationship could be inferred.

In response to the motion to dismiss, Plaintiffs argue that the duty to disclose arose from (a) Wells Fargo's knowledge of the internal problems it had encountered with Plaintiffs' account and similar accounts and (b) litigation in other courts in involving Wells Fargo's treatment of accounts involving bankruptcy debtors.   At most, these facts merely establish that Wells Fargo knew of problems with its internal operating system.   However, superior knowledge does not amount to special circumstances imposing a duty to disclose.  *Surrett v. TIG Premier Ins. Co.*, 869 F. Supp. 919, 924-25 (M.D. Ala 1994); *see also  Mason v. Chrysler Corp.*, 653 So. 2d 951, 954-55 (Ala. 1995) (dealership's knowledge of recurring defect in automobile model purchased by customer did not give rise to duty to disclose).   In sum, the factual allegations of the SAC do not support a claim for fraudulent suppression or concealment.

## I. Unconscionability (Count Eight)

Plaintiffs provide little, if any, opposition to Defendants' motion to dismiss this claim.[12]   In this cause of action, Plaintiffs seeks: (1) to have "the servicing

---

[12] One paragraph of Plaintiffs' two-paragraph response on this issue states: "The Shedds raise unconscionability to highlight the unequal bargaining power

contracts and insurance contracts [ ] rescinded," (2) recovery of "recompense for emotional distress," and (3)"restoration of Plaintiffs' credit rating." (SAC ¶ 105.) "The doctrine of unconscionability does not provide affirmative relief." *Layne v. Garner*, 612 So. 2d 404, 408 (Ala. 1992). Therefore, any claim for recompense or restoration necessarily fails. More importantly, Plaintiffs cannot succeed on their claim because they have not alleged that they were parties to either of the contracts they identify as unconscionable. The mortgage servicing contract was between Wells Fargo and Monument. The insurance referred to is the force-placed insurance obtained by Wells Fargo. By definition, Plaintiffs were not parties to force-placed insurance contracts, *i.e.*, insurance forced upon them without their consent. Plaintiffs' unconscionability cause of action is, therefore, due to be dismissed.

**K. Unjust Enrichment (Count Nine)**

Unjust enrichment is an equitable remedy requiring the plaintiff "[to] show that the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Avis Rent A Car Sys. v. Heilman*, 876 So. 2d 1111, 1122-23 (Ala. 2003). Count Nine asserts a laundry list of ways in which Wells Fargo was unjustly enriched, most of which Plaintiffs do not address in their response to the motion to dismiss. Some involve no exchange of money and, therefore, cannot support a claim. For example, Plaintiffs allege that Wells Fargo promised and failed to keep the bankruptcy workstation open and to stop collection calls, *attempted* to assert late fees, increased the amount of mortgage loan debt by adding late fees and other

---

between the parties, as well as patently unfair terms as detailed in the SAC." (Pls.' Br. 27, Doc. 91.)

charges, and caused the Plaintiffs to be unable to refinance their loan.  (SAC ¶ 105.)

Similarly, Plaintiffs' claim that Wells Fargo was unjustly enrichment because it

"enjoyed the use" of Plaintiffs' monthly payments falls short.  Plaintiffs were

obligated to make those payments by the terms of the promissory note and the

Chapter 11 Plan.  Plaintiffs' dispute is whether those payments were properly

applied, not whether they were improperly paid.

In fact, Plaintiffs' response addresses only one basis for unjust enrichment—

force-placed insurance premiums.  Count Nine alleges that Wells Fargo "force-

placed insurance on Plaintiffs' property and charged Plaintiffs premiums in which,

upon information and belief, Defendants have benefitted through shared premiums,

commissions or otherwise." (*Id.*)  Plaintiffs' response brief states the claim

differently, *i.e.*, "the Shedds suffered damage because Wells Fargo Defendants

colluded with the insurer to extend coverage amounts in excess of that necessary to

protect Wells Fargo Defendants' interest in the house."  (Pls.' Br. 29, Doc. 91.)

Neither of these assertions make clear exactly how Wells Fargo was unjustly

enriched.  Both claims are precluded by the mortgage contract, which permitted

Wells Fargo to determine the amount of coverage and to obtain coverage if Plaintiffs

did not.[13]   Even if Wells Fargo may have obtained an unintended benefitted from

the premiums, payment of those premiums was a contractual obligation and,

therefore, was not obtained by fraud or coercion.  Plaintiffs' claim for unjust

enrichment fails.

---

[13] The mortgage contract required that insurance "be maintained in the amounts and for the periods that Lender requires" and further gave the Lender the option to "to obtain coverage to protect Lender's rights in the Property" if Plaintiffs failed to do so.  (Mortg. 3, Ex. A, Doc. 15-1)

**L. Accounting (Count Ten)**

Count Ten asserts a separate claim for an accounting of mortgage interest and amortization.  In general, the equitable remedy of accounting is appropriate when there is a fiduciary relationship between the parties, where the defendant has engaged in fraud, or where the account is unusually complicated or difficult.  *Givens v. Saxon Mortg. Services, Inc.*, Civil Action No. 13-00245-KD-N, 2014 WL 2452891 (S.D. Ala. May 30, 2014).  Wells Fargo argues that Plaintiffs' claims do not fall into any of these categories. Plaintiffs apparently concede this claim, since they have not responded to Wells Fargo's motion on this point.  In any event, the Court finds that the facts alleged in the SAC do not support a claim for accounting.[14]

**M.  RESPA—Force-Placed Hazard Insurance  (Count Eleven)**

Plaintiffs have asserted several claims against Wells Fargo under the Real Estate Settlement Procedures Act  (RESPA), 12 U.S.C. § 2601 *et seq.*, as amended by Pub.L. 11-203, 125 Stat. 1376 (the Dodd-Frank Wall Street Reform and Consumer Act or "Dodd-Frank").  Count Eleven asserts a violation of 12 U.S.C. § 2605(k) which requires mortgage servicers to comply with certain notification requirements regarding force-placed hazard insurance.  A similar claim was dismissed from the FAC because that claim was based on acts to that took place prior to January 10, 2014, the date § 2605(k) became effective.  (Nov. 17, 2014 Order at 14-15, Doc. 34.) In the SAC, Plaintiffs assert that Wells Fargo violated  § 2605(k) by failing to comply

---

[14] The SAC does not allege facts giving rise to a fiduciary relationship, *supra* at 10 or fraud, *supra* at 14-16.  While the mortgage account is undoubtedly complicated, it is unlikely that an accounting would make it any less so or that an accounting would accomplish anything that could not be accomplished through discovery.

with RESPA's force-placed hazard insurance "[i]n 2014 after § 2605(k)'s effective date."  (SAC ¶ 116.)

Wells Fargo argues that this count is due to be dismissed because documents attached to the SAC show that no coverage has been purchased by Wells Fargo after November 3, 2014.  These documents—a summary of account activity and a summary of escrow disbursements (pp. 22 & 26 Doc. 74-1)—do not provide a basis for dismissal.  The former shows account activity from October 2014 through April 17, 2014, with a disbursement for hazard insurance in November 2013.  The latter reflects escrow disbursements from November 2010 through November 2014.  Neither of these *necessarily* negates the possibility that Wells Fargo force-placed hazard insurance in 2014.  This is an issue best left for summary judgment.[15]

**N.  RESPA Violation—Duty to Respond to Borrower Inquiries (Count Twelve)**

RESPA places a duty on a loan servicer to take action in response to a borrower inquiry within a prescribed time period.  U.S.C. § 2605(e)(2).  The borrower inquiry must comply with certain requirements before the duty is triggered.  A borrower inquiry that meets these requirements is called a Qualified Written Request (QWR). 12 U.S.C. § 2605(E)(1)(B).   In Count Twelve, Plaintiffs allege four separate violations of § 2605(e) based on four separate pieces of correspondence sent by Plaintiffs to Wells Fargo.  Wells Fargo argues, for different reasons, that none of these inquiries support a claim under § 2605(e).  Each of these arguments will be addressed separately.

---

[15] Plaintiffs volunteer that they will "relinquish this claim on summary judgment" if Wells Fargo provides proof that it did not force place any coverage in 2014.  (Pls. Rsp. 28, Doc. 91.)

### 1.  The December 29, 2013 Facsimile

In a facsimile addressed to Wells Fargo dated December 29, 2013,

Plaintiffs made the following request:

> Please forward via return mail a complete history of all payments
> received on my mortgage account (0508298213), from 09/01/2010
> through 12/29/2013 as soon as possible.

(Ex. D SAC Doc. 74-1.)  The facsimile included the mortgage loan number, requested

that the response be sent to Pamela Shedd, and provided an address.  It was signed

by both Pamela Shedd and George Shedd.  Plaintiffs allege that Wells Fargo violated

§ 2605(e) by:  (1) failing to respond this inquiry and (2) providing information

about Plaintiffs to a credit reporting agency within 60 days after the inquiry.

Wells Fargo argues that this inquiry did not trigger any RESPA duties

because the facsimile was not a QWR.  RESPA defines a QWR as follows:

> For purposes of this subsection, a qualified written request shall be a
> written correspondence, other than notice on a payment coupon or
> other payment medium supplied by the servicer, that—
>
> > (i) includes, or otherwise enables the servicer to
> > identify, the name and account of the borrower; and
>
> > (ii) includes a statement of the reasons for the belief of
> > the borrower, to the extent applicable, that the account
> > is in error or provides sufficient detail to the servicer
> > regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B) (emphasis added).  Pointing to subsection (ii), Wells Fargo

contends that facsimile cannot be a QWR because it does not include "a statement of

the reasons . . . for belief that the account is in error."  That argument ignores the

alternative language in that subsection—"or provides sufficient detail regarding

other information sought by the borrower."  Plaintiffs' facsimile clearly identified

the information sought—a complete history of all payments received, the date range of the information, and the account number.  Because it provided sufficient detail regarding the information sought, the facsimile could be construed as a Qualified Written Request. *Thepvongsa v. Reg'l Tr. Servs. Corp.*, 972 F. Supp. 2d 1221, 1228 (W.D. Wash. 2013) (letter was QWR, even though plaintiff was unaware of a particular error in his account, because "he clearly identified documents and categories of documents that he sought from the servicer"). *See also Garcia v. Wachovia Mortgage Corp.*, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (letter need not identify error to be QWR).[16]  Consequently, Wells Fargo's argument for dismissal fails.

### 2.  The May 2, 2014 Letter

In a seven-page letter to Wells Fargo dated May 2, 2014, Plaintiffs provided a detailed statement of errors in the handling of their account.[17]  Plaintiffs requested

---

[16] Wells Fargo relies on *Sirote v. BBVA Compass Bank*, 857 F. Supp. 2d 1213 (N.D. Ala. 2010), for the proposition that an inquiry must contain a statement of believed error to qualify as a QWR.  That case is distinguishable, however, because it was not clear how any of the requested information "actually relate[d] to the servicing of any accounts, as required by RESPA." *Id.* at 1221.  Sirote contended that he had never entered into a loan agreement with the bank and that his signature had been forged.  Thus, his request related to loan origination, not servicing.  In the instant case, it cannot be disputed that the request for payment history related to loan servicing.

[17] These include:  (1) failure to accept payments; (2) failure to properly credit payments to principal, interest, escrow and other charges; (3) failure to credit payments as of the date of receipt; (4) failure to pay taxes, insurance premiums and other charges in a timely manner or to refund escrow account balance; (5) imposing a fee without a reasonable basis (6) failing to provide an accurate payoff balance; (7) failing to provide accurate information regarding loss mitigation and foreclosure; (8) failing to transfer information from one loan servicer to another in a timely and accurate manner; (9) improper foreclosure notice; (10) wrongfully initiating foreclosure proceedings.

the Wells Fargo provide them with specific information, including full payoff information, a monthly amortization schedule, a breakdown of all late fees and other charges, copies of Plaintiffs' 1098 forms for certain tax years, and a payoff statement.

Wells Fargo responded with a letter dated May 20, 2014.  Despite the numerous errors set out by Plaintiffs in the QWR, Wells Fargo acknowledged only two only two issues:  (1) "Applying payments in accordance with the Chapter 11 Bankruptcy plan and a Payoff quote" and (2) "Escrow disbursements since September 01, 2010."  The letter provided a chart showing escrow disbursements for the relevant time period.  Despite an entire paragraph devoted to the bankruptcy payments and the payoff, the letter provided no real enlightenment in that regard:

> We have received notification of the court-approved modification to your loan that has occurred in connection with your Chapter 11 bankruptcy case.  Please be advised that we are diligently working to make updates to our system that will allow us to bring our system of record in line with the terms of the modification.  Once these system updates are complete we will be able to honor your requests for the following, Customer Account Activity Statement (CAAS); payoff; updates to system of record and clarification regarding payment amount the reflect the terms of your modified loan.  Please be assured that the delay caused by these system updates does not negatively impact your account or your ability to continue making your monthly payment in the new modified amount.  We sincerely appreciate your continued patience while we work through these system enhancements.  In the interim, if you have any additional questions regarding this situation, please feel free to contact us.

(Ex. F SAC, Doc. 74-1.)

The statute requires a mortgage servicer to respond to a QWR[18] within 30 days in one of three ways:  (1) "make appropriate corrections in the account of the

---

[18] Wells Fargo does not dispute that the May 2nd letter was a QWR.

borrower, including the crediting of any late charges or penalties, and transmit to

the borrower a written notification of such correction;" (2) "after conducting an

investigation, provide the borrower with a written explanation or clarification that

includes, to the extent applicable, a statement of the reasons for which the servicer

believes the account of the borrower is correct as determined by the servicer" or (3)

after conducting an investigation, provide the borrower with a written explanation

or clarification that includes information requested by the borrower or an

explanation of why the information requested is unavailable or cannot be obtained

by the servicer." 12 U.S.C. § 2605(e)(2).[19]

Wells Fargo argues that the May 20th letter, as a matter of law, satisfied its

duty to respond under RESPA, although it neglects to say how it does so or which

category of response it falls under. Clearly, the first category does not apply because

Wells Fargo made no corrections to Plaintiffs' account. Nor does the second

category apply because the letter does not address many of the numerous errors

pointed out in the QWR. That leaves only the third category—information

requested by the borrower or an explanation of why that information is unavailable.

The letter, in the Court's judgment, falls woefully short of satisfying those

requirements as a matter of law. First, the letter addresses only two errors

identified in the QWR, while completely ignoring the other eight. Second, with

respect to the bankruptcy issue the letter is a textbook example of a nonresponsive

response. In a nutshell, its states that Wells Fargo is working on problems with its

---

[19] In addition to the substantive information, the statute also requires that
any response provide the name and telephone number of an employee who can
assist the borrower. *Id.*

system related to the bankruptcy modifications and, at that at some unidentified point in the future, Wells Fargo will be able to provide information about the account.[20]  This claim survives the motion to dismiss.

### 3.  The August 27, 2014 & October 9, 2014 Letters

The SAC also alleges RESPA violations based on QWR's dated August 27, 2014 and October 9, 2014.  Wells Fargo argues that claims based on these letters are due to be dismissed "because they are admittedly duplications of their May 2, 2014 letter to Wells Fargo, *to which Wells Fargo properly responded.*"  (Defs.' Br. 41, Doc. 84, emphasis added).  In support of this argument, Wells Fargo cites two cases, *Hawkins-El v. First American Funding, LLC,* 891 F. Supp. 2d 402 (E.D.N.Y. 2012) and *Bates v. JP Morgan Chase Bank, N.A.* 768 F.3d 1126 (11th Cir. 2014), both of which held that a plaintiff could not recover under RESPA for duplicative QWR's where the loan servicer had *adequately* addressed the issues raised in the initial QWR.  That is not the case here.  Hence, Wells Fargo's argument fails.

### N. Fair Credit Reporting Act (Count Thirteen)

Wells Fargo argues that Plaintiffs' claim under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§1681, *et seq.,* is insufficiently pled because it does not specify the failure in Wells Fargo's investigation into the dispute or the damages that resulted from the FCRA violation.  These arguments merit little response.  The facts supporting the inadequacy of the investigation are self-evident.  Plaintiffs have alleged in (painful) detail how Wells Fargo failed to correct problems with Plaintiffs'

---

[20] Even if that statement might be considered an attempt to explain why the information was not available, a factfinder could conclude that the explanation—following *six years* of the servicer's inability to handle bankruptcy modifications—did not satisfy RESPA's response requirement.

account, one result of which was the reporting of erroneous credit information.

Wells Fargo's argument that damages have not been pled, is flatly contradicted by

paragraph 155 of the SAC, wherein Plaintiffs assert a number of damages resulting

from the FCRA violation.  This cause of action states a claim upon which relief may

be granted.

**O. Truth in Lending Act Claims (Counts Fourteen & Fifteen)**

The Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.*, imposes civil

liability on "any *creditor* who fails to comply with [TILA's] requirement[s]." 15 U.S.C.

§ 1640(a) (emphasis added).  Wells Fargo and Monument contend that they are not

creditors within the meaning of the statute and, therefore, cannot be held liable

under TILA.  The statute provides a very specific definition of a creditor:  "The term

'creditor' refers only as to a person who both (1) regularly extends, . . . consumer

credit which is payable by agreement in more than four installments or for which

the payment of a finance charge is or may be required, and (2) is the person to

whom the debt arising from the consumer credit transaction is initially payable on

the face of the evidence of indebtedness." 15 U.S.C. § 1602(g).  Defendants point out

that neither of them is "the person to whom the debt . . . is initially payable" since

Monument acquired the loan by assignment and Wells Fargo is the loan servicer.

Plaintiffs counter these Defendants should not be allowed to escape liability.

Plaintiffs rely exclusively on a bankruptcy court decision, *Peed v. Seterus, Inc. (In re*

*Peed),* Bankruptcy No. 09-15486, 2014 WL 2987637 (Bankr. S.D. Ala. July 1, 2014) in

which the bankruptcy court held an assignee of a mortgage could be held liable as a

"creditor" for TILA violations committed by its mortgage servicer.  Invoking

27

Congressional intent and agency principles, the court determined that a creditor could be held liable for the acts its servicer, but it did not explain how the assignee/mortgagee in that case qualified as a creditor under TILA's definition. And nothing in *Peed* supports the proposition that a loan servicer (such as Wells Fargo) can be considered a creditor under TILA.

Recently, in *James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 2015 WL 1038143 (S.D. Ala. March 9, 2015), Judge Steele rejected the assignee/creditor liability theory adopted in *Peed* because the theory ignores the clear, express language of the statute.

> [P]laintiffs urge the Court to expand § 1640(a) civil remedies for TILA violations to reach all creditors and assignees. They are absolutely correct that TILA is a consumer protection statute to be construed liberally. However, the liberal construction canon is not a judicial license to rewrite a statute to fit what a court thinks Congress should or might have said, but did not. Federal courts are not at liberty to second-guess or rewrite federal statutes merely because they disagree with legislative choices or think they can capture congressional intent more accurately and artfully than Congress itself did. Here, Congress has seen fit to define "creditor" in a narrow manner that excludes assignees; has generally provided for civil liability under § 1640(a) only as to "creditors;" and has provided in § 1641(e) for assignee liability for consumer credit transactions secured by real property only where violations are apparent on the face of the disclosure statement, "[e]xcept as otherwise specifically provided." Such specific, unambiguous statutory language governs, and precludes expansion of TILA liability to reach FNMA in the circumstances presented here.

*James v. Nationstar Mortgage, LLC*, 92 F. Supp. 3d at __, 2015 WL at *5 (S.D. Ala. 2015) (internal citations omitted).

This Court finds the reasoning in *James* persuasive. TILA liability cannot be imposed on either Wells Fargo nor Monument because neither qualifies as a

"creditor" within the meaning of the statute.  Plaintiffs' TILA claims are, therefore, due to be dismissed.

### O.  Fair Debt Collection Practices Act (Count Sixteen)

Wells Fargo and Monument argue that this count is not adequately pleaded against either of them.  Count Sixteen asserts a claim against both Monument and Wells Fargo for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.*[21]  Defendants put forth two bases for dismissal.  The first is rather vaguely asserted.  Defendants point out, correctly, that the FDCPA generally does not apply to creditors or mortgage servicers.  But they gloss over one important exception to that general rule. "[C]onsumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors, *as long as the debt was not in default at the time it was assigned.*' " *Buckentin v. SunTrust Mortgage Corp.*, 928 F. Supp. 2d 1273, 1294 (N.D. Ala. 2013) (emphasis added) (quoting *Reese v. JPMorgan Chase & Co.*, 686 F.Supp.2d 1291, 1307 (S.D.Fla.2009)). In this case, Plaintiffs allege that the debt was considered to be in default at the time Wells Fargo became the loan servicer.  Consequently, the general rule excluding mortgage servicers would not apply to Wells Fargo.  There is, however, no reason Monument, as creditor, should be considered a debt collector.[22]

---

[21] The FDCPA defines debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

[22] Plaintiffs contend that Monument and Wells Fargo should both be held liable because Monument is owned by Wells Fargo.  This argument is meritless for two reasons.  First, the Wells Fargo defendant in this case--Wells Fargo Home Mortgage, Inc.—is not "Wells Fargo Bank, N.A." the alleged sole shareholder in

Defendants also argue that claims against both should be dismissed because the SAC does not allege any debt collection attempts made by Monument and the specific allegations against Wells Fargo are insufficient.  This argument is valid as to Monument but not as to Wells Fargo.  The SAC asserts that Wells Fargo made telephone calls to Plaintiffs who were represented by counsel in violation of 15 U.S.C. § 1692c(2) the FDCPA and sent monthly account statements and a payoff statement in violation of 15 U.S.C. § 1692(e)(2)(A).  (SAC ¶¶ 188-89.)  In sum, the claim asserted against Monument in Count Sixteen due to be dismissed; the claim against Wells Fargo is not.

### IV.  Conclusion

For the reasons discussed above, the motion to dismiss the Second Amended Complaint filed by Defendants Wells Fargo Home Mortgage, Inc. and Monument Street Funding II, LLC is hereby granted, in part, and denied, in part, as follows:

- All fictitious parties are **dismissed.**
- Plaintiff George Shedd's claims for breach of contract and violations of RESPA, TILA, and FDCPA are **dismissed** for lack of standing.
- Plaintiffs' claim for breach of contract against Wells Fargo is **dismissed**.
- Plaintiffs' claims for breach of the duty of good faith and fair dealing (Count Two), breach of fiduciary duty (Count Three), fraud (Count Five), promissory fraud (Count Six), fraudulent suppression or concealment (Count Seven), unconscionability (Count Eight), unjust enrichment (Count Nine), accounting (Count Ten), and violation of TILA (Counts Fourteen & Fifteen) are **dismissed** in their entirety.
- Plaintiffs' claim against Defendant Monument for violation of the FDCPA is **dismissed**.
- Plaintiff Pamela Shedd's claims for breach of contract against Monument (Count One), wantonness (Count Four) and violations of RESPA (Counts

---

Monument Street Funding II, LLC.   Second, even if the two were one and the same, Plaintiffs' argument completely ignores "[a] basic tenet of corporate law"—"the corporation and its shareholders are distinct entities."  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).

Eleven & Twelve), FCRA (Count Thirteen), and FDCPA against Wells Fargo
(Count Sixteen) survive.

- Plaintiff George Shedd's claims for wantonness (Count Four) and violation of
the FCRA  (Count Thirteen) survive.


**DONE**  and **ORDERED** this the 26th day of October, 2015.




s/*Charles R Butler, Jr.*
**Senior United States District Judge**