IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGE P. SHEDD, JR., *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION 14-0275-WS-M |
| | ) |
| WELLS FARGO BANK, N.A., *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

    This matter, which was recently reassigned to the undersigned's docket, comes before the Court on defendant Wells Fargo Bank, N.A.'s Motion for Judgment on the Pleadings (doc. 176). The Motion has been extensively briefed and is now ripe for disposition.[1]

**I.    Relevant Background.**

    On March 1, 2016, plaintiffs, George and Pamela Shedd, filed their Third Amended and Supplemental Complaint (doc. 152) against Wells Fargo Bank, N.A., Barclays Capital Real Estate, Inc., and Monument Street Funding, II, LLC. On the face of the pleadings, this case is a mortgage loan dispute, not unlike dozens of others that have traversed this District Court in the

---

[1] Also pending is plaintiffs' Motion for Leave to File Surreply (doc. 208), to which Wells Fargo has filed a Response in Opposition (doc. 209). "Although sur-replies are disfavored in this District Court, they are not forbidden." *Northstar Marine, Inc. v. Huffman*, 2014 WL 6454940, *1 n.1 (S.D. Ala. Nov. 13, 2014); *see also Wood v. B.C. Daniels, Inc.*, 2008 WL 2163921, *1 n.1 (S.D. Ala. May 21, 2008) ("the filing of sur-replies is discouraged because of the inefficiencies inherent in an interminable thrust-and-parry debate between the parties"). In substantial part, plaintiffs' proposed Surreply (doc. 208-1) rehashes arguments previously made. The Court agrees with Wells Fargo that sur-replies are not properly used to reiterate arguments that have already been presented. That said, plaintiffs' sur-reply would also address the ramifications of an Order (doc. 201) entered by Senior District Judge Butler on May 16, 2016, while briefing on the Rule 12(c) Motion was ongoing and before the case was reassigned to the undersigned. Such a sur-reply might prove helpful, particularly as the Court tries to orient and familiarize itself with what transpired in the two years that this case was on Judge Butler's docket; therefore, in the Court's discretion, and notwithstanding its disfavored status, the Motion for Leave to File Surreply is **granted**. The plaintiffs' proposed sur-reply will be considered on the merits in adjudicating the Motion for Judgment on the Pleadings.

wake of the financial crisis and the concomitant bursting of the so-called "housing bubble." The Shedds entered into a mortgage loan transaction in connection with the purchase of a home in 1991, then subsequently fell behind on their payments and filed for Chapter 11 bankruptcy protection. The Third Amended Complaint documents various alleged infirmities in the handling of the Shedds' loan by defendants Wells Fargo (alleged to be servicer of the loan), Barclays (alleged to have previously serviced the loan) and Monument (alleged to be assignee of the mortgage). This basic fact pattern is not uncommon in the undersigned's experience. The difference, however, is that (1) the Shedds' Third Amended Complaint sprawls across 128 pages, 193 paragraphs, and 16 causes of action; and (2) this case has been fiercely litigated for nearly two years, has accrued more than 215 docket entries, with nearly six months of discovery still ahead.[2]

On May 18, 2016, this case was transitioned to the undersigned's docket.[3] Review of the docket sheet reveals a pending Motion for Judgment on the Pleadings, wherein Wells Fargo seeks judgment on the pleadings as to two counts of the Third Amended Complaint, namely, Count Four (which sounds in a theory of wantonness) and Count Sixteen (a statutory claim for violation of the Fair Debt Collection Practices Act). Plaintiffs vigorously oppose entry of judgment on the pleadings.

**II.    Legal Standard for Rule 12(c) Motions.**

From the outset, both the Shedds and Wells Fargo demonstrate confusion as to the legal standard governing the Motion for Judgment on the Pleadings. Indeed, both sides incorrectly

---

[2] These facts are highly suggestive of a case that has gone off the rails and has been overlitigated to an extreme degree. The Court understands that Judge Butler undertook various measures to attempt to prevent this action from spiraling out of control. The undersigned will do the same, and will take decisive action to curb abusive litigation practices by any party where they are found to occur.

[3] It bears emphasis that this Court has not lived with this case for the last two years like the litigants have, and therefore is not steeped in the intricacies of the extensive motion practice that has taken place. Henceforth, when the parties believe that a prior ruling by Judge Butler or Magistrate Judge Milling in this case may be germane to some issue presented to this Court for adjudication, the parties are expected to notify the undersigned and not simply assume that the Court will unilaterally sift through hundreds of pleadings in the file on the off-chance that some aspect of that issue might have been addressed via uncited ruling prior to reassignment to this Court's docket.

invoke the "no set of facts" test associated with *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  (*See* doc. 177, at 3-4; doc. 200, at 4.)  That formulation of the standard is no longer valid in the wake of the Supreme Court's announcement in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), that *Conley*'s "no set of facts" language "has earned its retirement."  550 U.S. at 563.  Rather, the *Twombly* "plausibility" test, and not the retired "no set of facts" formulation, governs here.  *See, e.g., Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010) ("We evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. … To avoid dismissal, a plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face.") (citations and internal quotation marks omitted).[4]

As a matter of well-settled law, "[j]udgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999) (similar); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) (similar).  "In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335.  "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.* (citation omitted).

---

[4] *See also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n. 8 (11th Cir. 2002) (explaining that whether a complaint is reviewed under Rule 12(b)(6) or Rule 12(c) is of no practical import because under both rules, "the question was the same: whether the count stated a claim for relief"); *HSBC Realty Credit Corp. (USA) v. O'Neill*, 745 F.3d 564, 570 (1st Cir. 2014) ("We review a Rule 12(c) dismissal like we would a Rule 12(b)(6) dismissal: *de novo*, taking as true the losing party's well-pleaded facts and seeing if they add up to a plausible claim for relief."); *Graziano v. Pataki*, 689 F.3d 110, 114 (2nd Cir. 2012) ("To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.") (citation and internal quotation marks omitted); *Bouboulis v. Scottsdale Ins. Co.*, 860 F. Supp.2d 1364, 1370 n.1 (N.D. Ga. 2012) ("As the standard for Rule 12(b)(6) applies equally to Rule 12(c), the *Iqbal/Twombly* rule governs the resolution of defendant's motion for judgment on the pleadings.").

These principles, along with the *Twombly* "plausibility" standard, inform and guide the analysis of Wells Fargo's Rule 12(c) Motion.[5]

### III.     Count Four (Wantonness).

#### A.     *Nature of the Shedds' Wantonness Claim.*

By way of background and context, according to the Third Amended Complaint, servicing responsibilities for the Shedds' loan were transferred to Wells Fargo on September 1, 2010, at which time Wells Fargo became "servicing agent for Monument." (Third Amended Complaint (doc. 152), ¶ 39.)  Plaintiffs allege that Wells Fargo "continued to breach Plaintiffs' contract under the loan and mortgage, and further breached its contract with Monument, of which Plaintiffs are third party beneficiaries," thereafter. (*Id.*)  Plaintiffs further maintain that Wells Fargo engaged in "other unlawful acts" amounting to a "pattern and practice of misconduct" motivated by "self-dealing and desire to increase income and profits … at the expense of Plaintiffs." (*Id.*, ¶ 48.)  The Third Amended Complaint details these alleged shortcomings exhaustively. (*Id.* at pp. 28-60.)

In Count Four, the Shedds allege a claim of wantonness against Wells Fargo. (*Id.*, ¶¶ 78-80.)  The scope of Count Four is critical to evaluation of Wells Fargo's Rule 12(c) motion. Rather than pegging the wantonness claim to the dozens of errors and improprieties alleged over

---

[5]     After briefing on Wells Fargo's Rule 12(c) Motion had concluded (including plaintiffs' filing of a proposed sur-reply), plaintiffs filed a "Notice of Pertinent and Significant Authority" (doc. 210).  Plaintiffs are correct that Civil L.R. 7(f)(3) creates a procedure by which a party may apprise the Court of "pertinent and significant authority" that came to the party's notice after briefs were filed.  Nonetheless, the Shedds do not properly apply that procedure here. The case cited in the Notice is *Perez v. Wells Fargo N.A.*, 774 F.3d 1329 (11th Cir. 2014).  The Shedds maintain that *Perez* "disposes of" Wells Fargo's Rule 12(c) Motion; however, they do not explain why, instead citing generically to three pages of *Perez* and eight pages of previously filed briefing.  On this showing, the Court cannot discern the proposition(s) for which the Shedds would rely on *Perez*, much less their reasoning for concluding that it "disposes of" Wells Fargo's Motion.  At most, it appears that the Shedds point to *Perez* as an articulation of the legal standard governing Rule 12(c) Motions.  The Court has considered and incorporated the *Perez* description of the legal standard into this Order.  To the extent that the Shedds might be relying on *Perez* to advance some other, different, unspoken or new argument, the Court rejects it because (i) from the face of the Notice, it is impossible to discern what plaintiffs' *Perez* argument might be; and (ii) new arguments are forbidden by Civil L.R. 7(f)(3), in any event.  Besides, *Perez* was a published Eleventh Circuit opinion dating back to 2014 that was readily available to plaintiffs throughout the briefing process on Wells Fargo's Motion for Judgment on the Pleadings, and they have not shown good cause for omitting it from their briefs.

the span of more than 30 pages of their Third Amended Complaint, the Shedds focus on a subset of those allegations. From the face of the Third Amended Complaint, the Shedds' wantonness claim is directed at "Wells Fargo's failure to perform its duties outlined in its November 21, 2011 letter to plaintiffs." (*Id.*, ¶ 79.) Read in its entirety, however, Count Four specifically includes the following allegations: (i) the November 21, 2011 letter stated that the "bankruptcy workstation would remain open" so that Wells Fargo could "accept payments and stop the collection calls;" (ii) Wells Fargo continued to report the Shedds as delinquent to consumer reporting agencies; (iii) Wells Fargo continued to undertake collection efforts, including telephone calls; (iv) Wells Fargo failed to keep the "bankruptcy workstation" open; (v) Wells Fargo continued to "misallocate payments, and assess fees and other charges without any basis to do so;" (vi) Wells Fargo "failed to properly report Form 1098 mortgage interest deductions" for four years; (vii) Wells Fargo "wrongfully force-placed hazard insurance in 2012 and 2013 in excessive amounts;" and (viii) Wells Fargo "caused the other damages detailed" in the Third Amended Complaint as a result of "duties set out and promised in its November 21, 2011 letter to Plaintiffs, and subsequent promises in its May 20, 2014 letter to Plaintiffs described herein, which it failed to perform." (*Id.*, ¶ 79.)[6]

### B.   The **Shepherd** / **James** *Line of Cases.*

In its Rule 12(c) Motion, Wells Fargo posits that Count Four should be dismissed because Alabama law does not recognize a cause of action for wanton servicing of a mortgage loan. Abundant federal authority supports this premise. *See, e.g., James v. Nationstar Mortg., LLC*, 92 F. Supp.3d 1190, 1198 (S.D. Ala. 2015) (recognizing that "a veritable avalanche of recent (and apparently unanimous) federal precedent has found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law"). This line of authority proceeds in "recognition that the mortgage servicing obligations at issue here are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note

---

[6]   As to the contents of the May 20 letter, the Third Amended Complaint pleads in a different count as follows: "Wells Fargo stated in its letter of May 20, 2014 that we are diligently working to make updates to our system that will allow us to bring our system of record in line with the terms of the modification." (*Id.*, ¶ 85.) The Shedds plead that "these statements were false when made." (*Id.*, ¶ 86.)

executed by the parties, rather than a duty of reasonable care generally owed to the public." *Id.* at 1200.

Any lingering doubts as to the state of Alabama law on this point were eradicated by the Alabama Supreme Court last year in a case styled *U.S. Bank Nat'l Ass'n v. Shepherd*, --- So.3d ----, 2015 WL 7356384 (Ala. Nov. 20, 2015). The *Shepherd* Court indicated that the parties' relationship "is based upon the mortgage and is therefore a *contractual* one; that is to say, the duties and breaches alleged [by the plaintiffs] clearly would not exist but for the contractual relationship between the parties." *Id.* at *12 (citation and internal quotation marks omitted). The Alabama Supreme Court observed that "the proper avenue for seeking redress when contractual duties are breached is a breach-of-contract claim, not a wantonness claim," and recognized that "federal courts applying Alabama law have repeatedly rejected attempts to assert wantonness claims based on a lender's actions handling and servicing a mortgage once the mortgage is executed." *Id.* at *12. *Shepherd* then block-quoted two full paragraphs from this Court's opinion in *James v. Nationstar*, including the precise aspects of *James* set forth *supra*, and concluded, "The *James* court has correctly stated Alabama law as it applies to claims alleging that lenders have acted wantonly with regard to servicing and handling mortgages." *Shepherd*, 2015 WL 7356384, at *13.

Wells Fargo's argument for dismissal of Count Four is a straightforward application of *Shepherd* and *James*. In particular, Wells Fargo maintains that the Shedds' pleading demonstrates that their wantonness claim arises from duties created by the underlying contract documents, and is based on loan servicing functions such as allocating payments, making telephone calls about the status of the loan, reporting the Shedds' purported delinquency, assessing fees, reporting mortgage interest, and managing hazard insurance for the property.

      C.      ***Plaintiffs' Attempt to Distinguish this Case from* Shepherd / James.**

In response, the Shedds argue that this case is distinguishable from the likes of *Shepherd* and *James* because Count Four does not allege that Wells Fargo wantonly breached duties owed under the note or mortgage, but instead hinges on Wells Fargo's purported failure to perform promises made in the November 21, 2011 letter. This proposed distinction fails. As an initial matter, plaintiffs' position does not accurately characterize their wantonness claim. Recall that Count Four ascribes wantonness to Wells Fargo's actions of continuing to report the Shedds as delinquent, continuing to undertake collection efforts, failing to keep open a "bankruptcy

workstation," misallocating payments, assessing fees and charges improperly, failing to report Form 1098 mortgage interest deductions, wrongfully force-placing hazard insurance, and so on. The November 21 letter, by contrast, references precious few of these functions; instead, the Shedds appear to be relying exclusively on a single sentence in that letter wherein Wells Fargo wrote, "Bankruptcy workstation will now remain open until July 2013, which will allow WFHM to accept payments and stop the collection calls."  (Doc. 74-1, at 21.)  Most of Count Four has nothing to do with the November 21 letter, but pleads that Wells Fargo wantonly performed typical loan servicing functions stemming from the mortgage and loan documents.  It is disingenuous, then, for the Shedds to insist that their wantonness claim is grounded solely in fresh duties assumed via the November 21 letter, as opposed to general loan-servicing responsibilities undertaken by Wells Fargo pursuant to the underlying mortgage documents.[7]

More fundamentally, the Shedds' argument misapprehends the *Shepherd* / *James* line of authorities.  Contrary to plaintiffs' position, those decisions do not turn on the existence of an express contract between loan servicer and borrower.  After all, in numerous mortgage-loan servicing contexts, no such express, direct contracts exist.  Rather, these authorities rest on the uncontroversial premise that the relationship between servicer and borrower is grounded in the underlying loan transaction, inasmuch as the duties and breaches ascribed to the mortgage servicer "clearly would not exist but for the contractual relationship between the parties."

---

[7] By way of elaboration, the Court understands that the Shedds construe the November 21 letter as containing promises by Wells Fargo to keep the bankruptcy workstation open, and to stop making collection calls.  Likewise, the wantonness claim includes allegations that Wells Fargo failed to keep the bankruptcy workstation open and continued making collection calls.  In their briefs on the Rule 12(c) Motion, plaintiffs focus almost exclusively on the "telephone calls" aspect of Count Four.  *See* doc. 200, at 5 ("Wells Fargo, contrary to its duty created by the letter, did not stop the calls or keep the bankruptcy workstation open."), 6 ("No contract forbade Wells Fargo's calls to the Shedds"), 7 ("Wells Fargo undertook a duty it did not owe under the note or mortgage: to stop all telephone calls"), 8 (Wells Fargo's conduct "caus[ed] emotional and mental anguish to the recipients of repeated phone calls"); doc. 208-1, at 3 (Wells Fargo "undertook a duty it did not by contract owe – to stop calling Plaintiffs"), 4 ("Wells Fargo then proceeded to recklessly telephone the Shedds numerous times after assuming a duty not to do so.").  Yet the Shedds' briefs say nothing about the many other aspects of their wantonness claim (relating to Wells Fargo's purportedly wanton performance of classic, run-of-the-mill mortgage servicing functions) that have no apparent connection to the November 21 letter.

*Shepherd*, 2015 WL 7356384, at *12.[8]  Were it not for the mortgage and the promissory note, Wells Fargo would have had no duties to the Shedds at all; indeed, the entire *raison d'etre* of their interactions was the underlying mortgage documents.  Wells Fargo's obligations vis a vis servicing the Shedds' loan were plainly based upon the mortgage and stem from the mortgage and promissory note, as opposed to a duty of reasonable care owed to the general public.  Plaintiffs' Count Four complains that Wells Fargo wantonly collected payments, misallocated payments, assessed improper fees and charges, reported the Shedds' mortgage interest deduction incorrectly, mishandled hazard insurance for the property, and so on.  These are mortgage-servicing tasks rooted in the underlying mortgage documents, not broader duties of reasonable care owed to the public.[9]  As such, the Shedds' wantonness claim falls neatly within the paradigm exemplified by the long line of federal authorities cited in *James* (and embraced by the Alabama Supreme Court in *Shepherd*).

---

[8]  *See also James*, 92 F. Supp.3d at 1200 (dismissing borrower's wantonness claim against loan servicer for failing to credit loan payments properly, inasmuch as "mortgage servicing obligations here are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note," even though loan servicer had executed neither); *Costine v. BAC Home Loans*, 946 F. Supp.2d 1224, 1234 (N.D. Ala. 2013) (dismissing negligence claim against mortgage servicer for handling payments improperly and assessing improper charges, where "the duties and breaches alleged by Plaintiffs clearly would not exist but for the contractual relationship" between borrower and lender); *Prickett v. BAC Home Loans*, 946 F. Supp.2d 1236, 1244-45 (N.D. Ala. 2013) (dismissing wantonness claim against mortgage servicer for processing of payments, charges and fees associated with mortgage, even though servicer had no direct contractual relationship with plaintiffs, where "the duties and breaches alleged by Plaintiffs clearly would not exist but for the contractual relationship" and "there is no duty to the general public to properly service mortgage accounts"); *Bennett v. Nationstar Mortgage, LLC*, 2015 WL 5294321, *5-6 (S.D. Ala. Sept. 8, 2015) ("The rights and obligations relating to Bennett's mortgage account sound in contract, not tort, and the negligence/wantonness claims against the Defendants cannot stand," particularly where "Bennett clearly seeks to base at least part of his negligence and/or wantonness claims on conduct that *is* governed by the note and mortgage"); *Webb v. Ocwen Loan Servicing, LLC*, 2012 WL 5906729, *7 (S.D. Ala. Nov. 26, 2012) (dismissing wantonness claim against mortgage servicer because "Alabama law does not recognize a tort claim for wanton servicing of a mortgage where the obligation at issue – to properly service the mortgage – is contractual and arises from the mortgage and note").

[9]  *See, e.g., Bennett*, 2015 WL 5294321, at *6 ("Nationstar's obligations with respect to stating amounts due, collecting money from Bennett, accelerating Bennett's debt, initiating foreclosure proceedings, maintaining loan records, and causing forced place property insurance to be obtained are obligations upon which Bennett seeks to state a negligence and/or wantonness claim, but are governed by his mortgage and note.").

As mentioned, the heart of the Shedds' opposition to Wells Fargo's Rule 12(c) Motion as it relates to Count Four is their insistence that the wantonness claim is legally viable because "Wells Fargo created a duty it did not otherwise owe in its November 21, 2011 written promise to stop calling the Shedds, and recklessly breached it by telephoning them numerous times after promising not to do so." (Doc. 200, at 6.)[10]  But the Shedds' own words underscore the contract-based nature of the relationship and the contractual origins of any purported duty owed by Wells Fargo, as plaintiffs refer to a "written promise" as the source of such duty.  More broadly, plaintiffs' argument overlooks the fundamental point that Wells Fargo's telephone calls about the loan were part and parcel of its mortgage servicing responsibilities that, again, stemmed from the underlying mortgage and promissory note.  Wells Fargo's duty properly to service the mortgage, of which a duty to refrain from abusive collection practices may be a part, was created by – and arises from – the mortgage documents.  Any collection calls made by Wells Fargo stem from those contractual documents, just as any other servicing responsibilities would be.  To put it in the *Shepherd* vernacular, the Shedds' relationship with Wells Fargo is based upon the mortgage and is therefore a contractual one, because the duties and breaches asserted by the Shedds (including alleged wanton collection calls) would not exist but for the contractual relationship and Wells Fargo's loan-servicing obligations.

---

[10]  Plaintiffs say the fact of the November 21 letter and the "written promise" therein constitutes a "critical distinction" between this case and state and federal decisions construing Alabama law as not recognizing a cause of action for wanton servicing of a mortgage.  But they do not identify a single case – from the dozens that have addressed this issue – in which any court has held, or even suggested, that an otherwise moribund claim for wanton servicing of a mortgage might spring to life if the plaintiff accused the loan servicer of not following through on something it said it would do or refrain from doing in correspondence while performing loan servicing obligations pursuant to the underlying mortgage and note.  Nor do the Shedds identify any principled reason why such a distinction ought to make a difference in terms of the developing jurisprudence in Alabama.  Simply stated, plaintiffs have seized on a purported distinction between this case and extant authorities, but they have never explained why, in either doctrinal or analytical terms, such a distinction should make a difference or obviate the expansive authorities holding that Alabama law does not recognize a cause of action for wanton servicing of a mortgage.

It is not persuasive to respond, as the Shedds do, that Judge Butler's prior rulings on the viability of contract claims in this action somehow vindicate the validity of Count Four.[11]  The Shedds' characterization of Judge Butler's Order dated October 26, 2015, as a definitive holding that no contract exists is misguided and inaccurate.  In fact, that Order made no grand pronouncements that there were no contracts between Wells Fargo and the Shedds, but simply pointed out defects in plaintiffs' pleading of such a contract.  (*See* doc. 105, at 10.)  Similarly, his Order of May 16, 2016 was predicated on the legal principle that Wells Fargo's status as owner of Monument did not confer upon it standing to sue the Shedds (independently of Monument) to enforce Monument's contracts.  (*See* doc. 201, at 2-3.)  Simply put, there has been no conclusive ruling in these proceedings that no contract exists between Wells Fargo and the Shedds.  Moreover, nothing in the line of authorities described *supra* suggests that a non-actionable "wanton servicing of a mortgage claim" may somehow be resuscitated and become viable if accompanying contract claims are dismissed for pleading defects.  Stated differently, the oft-repeated principle that Alabama does not recognize a cause of action for wanton servicing of a mortgage is not conditioned on whether the borrower ultimately prevails in his or her breach of contract claims against the servicer; rather, the legal determination that no claim for wanton servicing of a mortgage exists in Alabama holds true regardless of whether the plaintiff succeeds or fails in attempting to plead contract claims against the servicer.

In sum, despite plaintiffs' protestations that their wantonness claim is unique, Count Four reads very much like numerous other claims for wanton servicing of a mortgage that federal and state courts have rejected as not being cognizable under Alabama law.  Try though they might, plaintiffs cannot avoid the fundamental truth that Count Four ascribes wantonness to the manner in which Wells Fargo performed various core loan servicing functions (*i.e.*, allocating payments, calling the borrower to discuss the loan's purportedly delinquent status, assessing fees and charges, reporting mortgage interest deductions, placing hazard insurance, and the like) on the

---

[11]  Specifically, plaintiffs posit that "this Court has already ruled that no contract existed between Wells Fargo and the Shedds" (doc. 200, at 6), "[t]he Court has already found that Wells Fargo owed no contractual duty to the Shedds" (*id.* at 7), "the Court has ruled no contract exists" (*id.* at 8), "[t]he Court had previously dismissed Shedds' contract claim against Wells Fargo" (doc. 208-1, at 3), and that Judge Butler's May 16, 2016 dismissal of Wells Fargo's contract counterclaim against Pam Shedd "demolishes Wells Fargo's argument" for dismissal of Count Four (*id.* at 2).

Shedds' loan. All of those core functions arise from, and are grounded in, the underlying mortgage and promissory note.[12] Accordingly, under the reasoning of *James* and *Shepherd* and numerous other like-minded authorities, the Court concludes that the Shedds' wantonness claim against Wells Fargo is not actionable, as a matter of law. The Rule 12(c) Motion will be **granted** as to Count Four.

## IV.  Count Sixteen (FDCPA).

In Count Sixteen of the Third Amended Complaint, the Shedds assert a claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"). That claim alleges that Wells Fargo was a "debt collector" who violated the FDCPA by (i) making telephone calls to the Shedds even when it knew they were represented by counsel, in violation of 15 U.S.C. § 1692c(a)(2); (ii) falsely representing the character, amount or legal status of the Shedds' debt, in violation of 15 U.S.C. § 1692e(2)(A), by overstating the amounts owed; and (iii) engaging in unfair practices by collecting amounts not expressly authorized by agreement or permitted by law, in violation of § 1692f(1). Wells Fargo seeks dismissal of Count Sixteen on the ground that it is not a "debt collector" within the statutory definition of the term.

---

[12] This conclusion applies, notwithstanding the Shedds' adamant position that Wells Fargo made a new promise to stop making collection calls in the November 21 letter, and that such promise was not reflected in the loan documents. That purported promise related to basic loan servicing functions, so the connection to the underlying contractual relationship is patently obvious and undeniable. Besides, the Court cannot embrace plaintiffs' position that the November 21 letter constitutes a "written promise to stop calling the Shedds." (Doc. 200, at 6.) The November 21 letter is attached to the Shedds' Second Amended Complaint as an exhibit (*see* doc. 74-1, at 21); therefore, it may be properly considered on a Rule 12(c) motion, even if its contents conflict with the factual allegations of the pleading. *See, e.g., Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."); *Perez*, 774 F.3d at 1340 n.12 (noting that on a Rule 12(c) motion, even "documents that are not a part of the pleadings may be considered, as long as they are central to the claim at issue and their authenticity is undisputed"). In that single-page letter, Wells Fargo made no promises to stop calling the Shedds; rather, it merely pointed out that keeping the bankruptcy workstation open "will allow WFHM to accept payments and stop the collection calls." (Doc. 74-1, at 21.) Thus, Count Four fails for the additional reason that the November 21 letter on its face was not a promise that Wells Fargo would never place another telephone call to the Shedds again (and thus could not have created an independent duty for Wells Fargo to refrain from calling the Shedds).

Congressional findings and the declaration of purpose accompanying the FDCPA specify that the statute's purpose is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Thus, a threshold requirement for liability in Count Sixteen is that the Shedds must establish that Wells Fargo is a "debt collector" within the meaning of the FDCPA. *See, e.g., Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015) ("There is no dispute that § 1692e applies only to debt collectors."); *Harris v. Liberty Community Management, Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012) ("The Act's restrictions apply only to 'debt collectors,'" as defined in the statute). "A 'debt collector' is a term of art in the FDCPA." *Ausur-El ex rel. Small, Jr. v. BAC (Bank of America) Home Loan Servicing LP*, 448 Fed.Appx. 1, 2 (11th Cir. Sept. 21, 2011). Subject to certain enumerated exclusions, the FDCPA defines the term "debt collector" to mean "any person [1] who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect … debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Wells Fargo invokes two statutory exemptions to this definition of debt collector. First, the FDCPA expressly excludes from the ambit of the term debt collector "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). Second, the FDCPA carves out an exemption from debt collector status for "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." 15 U.S.C. § 1692a(6)(B).

With respect to § 1692a(6)(A), Wells Fargo reasons that it falls within the "creditor" exception to the FDCPA because Wells Fargo owns Monument, which in turn owns the debt, thereby rendering Wells Fargo a creditor covered by the § 1692a(6)(A) exemption. The factual allegations on which this argument rests find considerable support in the Third Amended Complaint. In that pleading, the Shedds allege that defendant Monument "claims to be the assignee of the promissory note" executed by Pamela Shedd, and that Monument "is owned by one member, which in turn has one member, Wells Fargo Bank, N.A." (Doc. 152, ¶ 4.) The Third Amended Complaint expressly states that the Shedds' mortgage "is ultimately an asset of defendant Wells Fargo." (*Id.*) Plaintiffs plead the point in the plainest of terms by alleging that

"Wells Fargo, through its corporate ownership of subsidiaries, is today **the ultimate owner of** Monument and thus of **the loan and mortgage**." (*Id.*, ¶ 12 (emphasis added).)  Finally, that same pleading goes on to concede that "Wells Fargo and Monument are both owned by Wells Fargo Bank, N.A., and thus the distinction between Wells Fargo as a 'debt collector' … and Monument as the 'creditor' … is not applicable for purposes of liability under the FDCPA." (*Id.*, ¶ 186.)

The Complaint's portrayal of Wells Fargo as owner of the loan and mortgage is reinforced by the Answer filed by defendants Monument and Wells Fargo, wherein "Monument admits that it is the owner of the subject promissory note and mortgage, and that Wells Fargo is the owner of the subject promissory note and mortgage by virtue of its ownership of Monument." (Doc. 164, ¶ 4.)[13]  The Answer further states that "the [Shedds'] promissory note and mortgage were … transferred and assigned to Monument, which was thereafter acquired and is now a wholly owned subsidiary of Wells Fargo." (*Id.*, ¶ 6.)  Finally, the Answer provides that "Wells Fargo admits that as the owner of Monument, it is the owner of the subject loan." (*Id.*, ¶ 186.)

Because comparison of the averments in the competing pleadings reveals no dispute of fact on this point, the Court accepts for purposes of the pending Motion for Judgment on the Pleadings that defendant Monument is the owner of the Shedds' promissory note and mortgage, that Monument is a wholly owned subsidiary of Wells Fargo, and that Wells Fargo thus owns the promissory note and mortgage (*i.e.*, they are an asset of Wells Fargo).[14]  Based on these

---

[13] It is appropriate to review the Answer in adjudicating the Rule 12(c) Motion, at least insofar as it does not conflict with well-pleaded factual allegations in the Third Amended Complaint. *See, e.g., Perez*, 774 F.3d at 1336 (opining that Rule 12(c) "provides a means of disposing of cases when … a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings") (citation and internal quotation marks omitted); *Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp.3d 506, 510 (E.D. Va. 2014) (on Rule 12(c) review, "[t]he Answer's factual allegations are taken as true to the extent they do not contradict the factual allegations in the Complaint"); *Vinson v. Credit Control Services, Inc.*, 908 F. Supp.2d 274, 275 (D. Mass. 2012) (on Rule 12(c) review, "the court may consider factual allegations contained in the answer that are not contradicted by the complaint"); *Alexander v. City of Greensboro*, 801 F. Supp.2d 429, 433 (M.D.N.C. 2011) (explaining that "on a Rule 12(c) motion the court may consider the Answer" and that "factual allegations of the Answer are taken as true only where and to the extent they have not been denied or do not conflict with the complaint") (citations and internal quotation marks omitted).

[14] This is so, despite the Shedds' contention in their Surreply that "[t]he Court ruled on May 16 that Monument, not Wells Fargo, owns the loan with Pam Shedd," and expressly decided "that Wells Fargo does not own Pam Shedd's debt." (Doc. 208-1, at 5.)  In the first (Continued)

undisputed facts, Wells Fargo's contention that it is a creditor for FDCPA purposes and therefore falls within the creditor exception found at § 1692a(6)(A) appears meritorious on its face. After all, the statute defines "creditor" as including "any person … to whom a debt is owed," at least where such person did not receive assignment or transfer of defaulted debt "solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Based on the repeated, consistent allegations in both sides' pleadings that Wells Fargo owns the Shedds' debt, it cannot reasonably be disputed for Rule 12(c) purposes that Wells Fargo is a person to whom that debt is owed, thereby rendering it a "creditor" under the FDCPA.

Plaintiffs' only argument in opposition to Wells Fargo's invocation of the § 1692(a)(6)(A) exemption for FDCPA coverage is that such exemption is confined to "any officer and employee" of a creditor, and is not available to a creditor entity itself. (Doc. 200, at 10-11.)[15] The Shedds' argument tracks the literal language of the statute, which provides that the FDCPA does not apply to "any officer or employee of a creditor while, in the name of the

---

place, the argument that Wells Fargo does not own the mortgage is a new argument not properly raised for the first time in a reply or sur-reply. *See, e.g., Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted); *Brown v. CitiMortgage, Inc.*, 817 F. Supp.2d 1328, 1332 (S.D. Ala. 2011) (explaining that "it is improper for a litigant to present new arguments in a reply brief" and that "[n]ew arguments presented in reply briefs are generally not considered by federal courts"). Even if the Court were inclined to consider it, this new argument would not advance plaintiffs' cause. As discussed *supra*, a Rule 12(c) Motion is evaluated based on the pleadings, "accept[ing] as true all material facts alleged in the non-moving party's pleading." *Perez*, 774 F.3d at 1335. The Shedds having unambiguously, repeatedly pleaded in their Third Amended Complaint that Wells Fargo owns their debt, they cannot disavow those allegations in opposing the Motion for Judgment on the Pleadings merely because such well-pleaded facts are now inconvenient. Besides, contrary to their repeated representations, the May 16 Order entered by Judge Butler is devoid of any determination that "Wells Fargo does not own Pam Shedd's debt." The May 16 Order did nothing more than find that "Wells Fargo's status as owner of Monument does not give it standing to sue for breach of contract" (doc. 201, at 3), as to contracts nominally between Monument and Pam Shedd. Thus, plaintiffs' Surreply misstates the holding of the May 16 Order, which cannot reasonably be read as declaring that Wells Fargo does not own the loan, much less that it cannot be deemed a "creditor" for purposes of the FDCPA.

[15]   Plaintiffs concisely summarize their argument as follows: "It is curious how an exemption solely for an officer or employee of a creditor collecting its own debts could be misconstrued to apply to the creditor itself." (*Id.* at 11.)

creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). However, abundant authority has construed this exemption as reaching creditors themselves, not just their officers or employees. *See, e.g., Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480, 1484 (M.D. Ala. 1987) ("it is apparent from the statute's legislative history that Congress intended the creditor exclusion to cover not only officers and employees of creditors but creditors themselves").[16] Plaintiffs' objection, unsupported by any citations to case authorities, that the § 1692a(6)(A) exemption is confined to officers and employees of creditors, and does not cover creditors, is refuted by this extensive decisional authority.

In sum, then, Wells Fargo seeks dismissal of the Shedds' FDCPA claims on the ground that the pleadings establish that Wells Fargo lies within the "creditor" exemption found at 15 U.S.C. § 1692(a)(6)(A). Well-pleaded, undisputed factual allegations in both sides' pleadings confirm that Wells Fargo owns the Shedds' loan and mortgage, such that it is a creditor under the

---

[16]  *See also Winterstein v. CrossCheck, Inc.*, 149 F. Supp.2d 466, 469 (N.D. Ill. 2001) ("the Section 1692a(6)(A) exclusion includes both creditors themselves and their employees"); *Pelfrey v. Educational Credit Management Corp.*, 71 F. Supp.2d 1161, 1167 n.8 (N.D. Ala. 1999) ("Courts have generally accepted a construction of the statute that recognizes that this exception was intended to cover creditors themselves as well as their employees."); *Games v. Cavazos*, 737 F. Supp. 1368, 1386 n.9 (D. Del. May 23, 1990) ("It appears that this exception was intended to cover creditors themselves as well as their employees."); *Holmes v. Telecredit Service Corp.*, 736 F. Supp. 1289, 1291 n.3 (D. Del. 1990) ("It seems clear from the legislative history of the Act that Congress intended that this [§ 1692a(6)(A)] exclusion cover creditors themselves as well as their employees."); *Johns v. Wells Fargo Bank, N.A.*, 2015 WL 9238957, *9 (S.D. Ala. Dec. 17, 2015) ("because Wells Fargo owned the debt and was collecting its own debt, it is exempt as a 'creditor' under 15 U.S.C. § 1692a(6)(A)"); *McFerrin v. Capital One Bank (U.S.), N.A.*, 2015 WL 1419106, *3 (N.D. Ala. Mar. 27, 2015) (in FDCPA claim against Capital One, where pleadings alleged that defendant's collection actions were taken to collect a credit card debt owed to Capital One, "[t]his factual assertion, that defendant was a creditor, bars plaintiff's claim for relief under the FDCPA" pursuant to § 1692a(6)(A)); *Berman v. Wells Fargo Bank, N.A.*, 2013 WL 145501, *3 (M.D. Fla. Jan. 14, 2013) (concluding that even if defendant Wells Fargo otherwise qualified as a debt collector under the FDCPA, "it would be excluded from the statutory definition as a creditor attempting to collect its own debt" pursuant to § 1692a(6)(A)); *Arnold v. Bank of America, N.A.*, 2012 WL 3028343, *2 (N.D. Ga. June 20, 2012) (pursuant to § 1692a(6)(A), "[t]he term 'debt collector' does not include creditors who are attempting to collect their own debts"); *Ingram v. Wells Fargo Bank, N.A.*, 2012 WL 252886, *2 (M.D. Fla. Jan. 26, 2012) ("As the plaintiffs' creditor, Wells Fargo is not a 'debt collector,' and the plaintiffs fail to state an FDCPA claim against Wells Fargo."); *Liggion v. Branch Banking and Trust*, 2011 WL 3759832, *4 n. 8 (N.D. Ga. Aug. 24, 2011) ("§ 1692a(6)(A) states that creditors are not debt collectors").

FDCPA.  Plaintiffs' only counterargument is that the § 1692(a)(6)(A) exemption is limited to employees and officers of a creditor, and is unavailable as a matter of law to a creditor itself; however, numerous (and apparently unanimous) case authorities are to the contrary.  Because the pleadings establish that Wells Fargo is a creditor and therefore exempt from the FDCPA, Count Sixteen is properly **dismissed**.

V.  **Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiffs' Motion for Leave to File Surreply (doc. 208) is **granted**;
2. Wells Fargo's Motion for Judgment on the Pleadings (doc. 176) is **granted**; and
3. Counts Four (wantonness) and Sixteen (FDCPA violations) are **dismissed with prejudice** because, after consideration of the pleadings, taking as true the well-pleaded facts in the Third Amended Complaint, the Shedds' allegations do not add up to a plausible claim for relief under either a wantonness or a FDCPA theory.

DONE and ORDERED this 13th day of June, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE