# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| GEORGE P. SHEDD, JR., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 14-0275-WS-M |
| ) | |
| WELLS FARGO BANK, N.A., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter comes before the Court on plaintiff Pam Shedd's Motion to Amend and Certify for Interlocutory Review, or in the Alternative for Entry of Rule 54(b) Final Judgment (doc. 224). The Motion has been briefed and is now ripe.

**I.    Relevant Background.**

This case is a mortgage-loan dispute, presenting a fact pattern not dissimilar from those in many actions that have been brought in this and other federal courts around the country in recent years. It has, however, followed a very different trajectory than those myriad other likeminded cases. Plaintiffs, George and Pamela Shedd, filed a Third Amended Complaint (doc. 152) that spans 128 pages and 16 causes of action asserted against three different defendants, Wells Fargo Bank, N.A., Barclays Capital Real Estate, Inc., and Monument Street Funding, II, LLC. In the 26 months it has been pending in this District Court, this action has been litigated quite aggressively, as there are already more than 225 docket entries. Unfortunately, this legacy of Sturm und Drang has not been accompanied by considerable tangible progress. Discovery remains ongoing, and the discovery period will not close until December 2016, with trial set for May 2017.

In April 2016, defendant Wells Fargo Bank, N.A. filed a Motion for Judgment on the Pleadings (doc. 176), seeking dismissal of, *inter alia*, Count Sixteen, a statutory claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"). Among its arguments for Rule 12(c) dismissal of that claim, Wells Fargo invoked the exemption

found at 15 U.S.C. § 1692a(6)(A). That section provides that the term "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). In support of its contention that the § 1692a(6)(A) exemption applies here, Wells Fargo cited several decisions interpreting the statute in that manner and pointed out that well-pleaded facts in the Shedds' Third Amended Complaint admit that Wells Fargo is the owner of the loan. (Doc. 177, at 8-9.) The sum total of plaintiffs' response to Wells Fargo's invocation of the § 1692a(6)(A) exemption was to quote the statutory language, then state as follows: "It is curious how an exemption solely for an officer or employee of a creditor collecting its own debts could be misconstrued to apply to the creditor itself; the other exemptions after (6)(A) provide escape routes for the creditor, but not (6)(A)." (Doc. 200, at 11.) Plaintiffs cited no authority lending support, either specifically or generally, to their reading of § 1692a(6)(A).[1] Nor did the Shedds' response brief express objection to or dissatisfaction with Wells Fargo's interpretation of the well-pleaded allegations of the Third Amended Complaint casting it as a "creditor" for FDCPA purposes.

Despite the decidedly one-sided briefing on application of the § 1692a(6)(A) exemption, the undersigned did not simply take Wells Fargo's word for it; rather, the Court conducted its own research to examine how other courts have construed that provision. That research yielded a plethora of district court decisions (including many from this Circuit) interpreting § 1692a(6)(A) as covering creditors themselves, rather than simply their officers or employees. These authorities appeared unanimous. Thus, the Court was confronted with the following set of circumstances: (i) Wells Fargo's contention that the FDCPA claim at Count Sixteen was not cognizable as a matter of law because of the § 1692a(6)(A) exemption; (ii) repeated, undisputed assertions in the pleadings that Wells Fargo owns the Shedds' debt, such that Wells Fargo is a

---

[1] Indeed, the only case identified in this portion of plaintiffs' opposition brief was a perfunctory mention of *Birster v. American Home Mortg. Servicing, Inc.*, devoid of even a citation to the decision itself, much less any verbiage explaining how or why plaintiffs believe that it supports their position. Notwithstanding these shortcomings, the Court located and reviewed *Birster*, which may be found at 481 Fed.Appx. 579 (11th Cir. July 18, 2012). This unpublished opinion nowhere discusses, interprets or even mentions § 1692a(6)(A); rather, *Birster* addresses circumstances under which an entity attempting to enforce a client's security interest may be deemed a debt collector for FDCPA purposes. The Shedds never even attempted to relate *Birster* to their skeletal § 1692a(6)(A) argument.

person to whom that debt is owed, rendering it a "creditor" under the FDCPA; (iii) extensive (and apparently unchallenged) authorities interpreting § 1692a(6)(A) as applying to creditors collecting debts in their own names; and (iv) a dearth of any supporting authority, reasoning or other development of plaintiffs' conclusory argument that § 1692a(6)(A) is limited to employees and officers of creditors.

Based on this universe of facts, law and argument presented by the parties and uncovered by the Court's own research, the undersigned entered an Order (doc. 220) on June 13, 2016 that, *inter alia*, granted Wells Fargo's Motion for Judgment on the Pleadings as to Count Sixteen. In so doing, the June 13 Order began with the premise that "[b]ased on the repeated, consistent allegations in both sides' pleadings that Wells Fargo owns the Shedds' debt, it cannot reasonably be disputed for Rule 12(c) purposes that Wells Fargo is a person to whom that debt is owed, thereby rendering it a 'creditor' under the FDCPA." (Doc. 220, at 14.)[2] The June 13 Order then noted the Shedds' conclusory argument that the § 1692a(6)(A) exemption is not available to a creditor entity itself, but rejected that contention because "abundant authority has construed this exemption as reaching creditors themselves, not just their officers or employees." (*Id.* at 14-15.) The June 13 Order cited no fewer than 11 district court decisions (including eight from this Circuit) that have interpreted the § 1692a(6)(A) exemption in such a manner. The June 13 Order explained that "Plaintiffs' objection, unsupported by any citations to case authorities, that the § 1692a(6)(A) exemption is confined to officers and employees of creditors, and does not cover creditors, is refuted by this extensive decisional authority." (*Id.* at 15.) Based on these determinations, the June 13 Order concluded that Count Sixteen was properly dismissed and

---

[2] To be sure, the June 13 Order recognized that plaintiffs had insisted in their Surreply that "Wells Fargo does not own the loan." (Doc. 208-1, at 8.) In the first place, the June 13 Order observed, that argument was procedurally improper and therefore due to be ignored because it was raised for the first time in a Surreply. (Doc. 220, at 13-14 n.14 ("the argument that Wells Fargo does not own the mortgage is a new argument not properly raised for the first time in a reply or sur-reply").) Even if that argument had been properly raised, the June 13 Order continued, it would not benefit the Shedds because "a Rule 12(c) Motion is evaluated based on the pleadings, 'accept[ing] as true all material facts alleged in the non-moving party's pleading." (*Id.* at 14 n.14 (citation omitted).) "The Shedds having unambiguously, repeatedly pleaded in their Third Amended Complaint that Wells Fargo owns their debt, they cannot disavow those allegations in opposing the Motion for Judgment on the Pleadings merely because such well-pleaded facts are now inconvenient." (*Id.*)

granted the Motion for Judgment on the Pleadings as to that issue. The June 13 Order did not dismiss all claims asserted by the Shedds against Wells Fargo; to the contrary, as they acknowledge, plaintiffs are still pursuing three federal statutory causes of action – two RESPA claims and a FCRA claim – against Wells Fargo, not to mention their multiple pending claims against the other defendants, Monument and Barclays.

On July 10, 2016, plaintiff Pamela Shedd filed a Motion for Interlocutory Review or for Entry of Rule 54(b) Final Judgment (doc. 224). In that Motion and her supporting memoranda, Shedd submitted nearly 30 pages of argument attacking the June 13 Order's application of the § 1692a(6)(A) exemption to this case. The vast majority of those arguments had never been presented to this Court for consideration while the Rule 12(c) Motion was pending. At any rate, Shedd proposes two alternative methods of addressing what she calls an error of law, to-wit: (i) certification of the June 13 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b); or (ii) entry of a final judgment under Rule 54(b), Fed.R.Civ.P., to allow her to take an immediate appeal from the June 13 Order. Either way, she proposes that this action be stayed "insofar as it involves Wells Fargo and Monument, but … allow her separate claims to proceed against Barclays, including discovery, as those claims are factually and legally independent of her claims against Wells Fargo and Monument, and to pursue discovery involving non-party witnesses not relevant to the FDCPA claim." (Doc. 224, at 1-2.)

**II.     Motion for Interlocutory Appeal.**

    *A.     Legal Standard.*

Shedd's Motion for Interlocutory Appeal is governed by 28 U.S.C. § 1292(b). That section allows certification of an issue for interlocutory review when the district court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The Eleventh Circuit has explained that "§ 1292(b) sets a high threshold for certification to prevent piecemeal appeals." *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008). In that regard, "to obtain § 1292(b) certification, the litigant must show not only that an immediate appeal will advance the termination of the litigation but also that the appeal involves a controlling question of law as to which there is substantial ground for difference of opinion." *Id.* (citation and internal quotation marks omitted). "Most interlocutory

orders do not meet this test." *Id.*; *see also McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004) (in exercising § 1292(b) discretion, appellate court "should keep in mind that the great bulk of its review must be conducted after final judgment, with § 1292(b) interlocutory review being a rare exception"); *Camacho v. Puerto Rico Ports Authority*, 369 F.3d 570, 573 (1st Cir. 2004) ("Section 1292(b) is meant to be used sparingly, and appeals under it are, accordingly, hen's-teeth rare."). "Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy." *McFarlin*, 381 F.3d at 1259. Indeed, "interlocutory appeals are inherently disruptive, time-consuming, and expensive … and consequently are generally disfavored." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000). As the movant seeking interlocutory appeal, Shedd bears the burden of showing that all § 1292(b) prerequisites are satisfied and that this is one of the rare exceptions in which judicial discretion should be exercised to grant this disfavored remedy. *See OFS Fitel*, 549 F.3d at 1359; *McFarlin*, 381 F.3d at 1264 ("[t]he burden of persuading us that a question of law meeting the requirements of § 1292(b) clearly is presented is on the petitioning party").

> **B.     *The "Substantial Ground for Difference of Opinion" Requirement.***

The Court agrees with Shedd that the June 13 Order involves a controlling question of law, to-wit: whether the FDCPA's exclusions from the scope of the term "debt collector" encompass creditors collecting their own debts in their own names.[3] However, the mere

---

[3]     That said, the Court rejects as inaccurate Shedd's repeated assertion that, aside from the § 1692a(6)(A) exemption, the June 13 Order implicitly found that Wells Fargo otherwise met the FDCPA definition of a "debt collector." *See* doc. 224, at 4 ("Had Wells Fargo not otherwise met the definition of debt collector, the Court would not have resorted to the exclusion it found in a(6)(A)."), 5 ("The Order found the [*sic*] Wells Fargo was a debt collector under a(6)"); doc. 227, at 2-3 ("From the Court's Order of June 13, 2016, it is obvious that the Court necessarily determined that Wells Fargo met the threshold definition of 'debt collector' in 1692a(6) …."), 4 ("The Order necessarily determined that Wells Fargo was a debt collector …."). To be clear, the June 13 Order made neither express nor implicit determination that Wells Fargo qualified as a FDCPA debt collector but for the § 1692a(6)(A) exemption. Plaintiffs and Wells Fargo disagreed as to whether Wells Fargo did or did not qualify as a debt collector under § 1692a(6). The Court did not need to resolve that disagreement because, even if plaintiffs were correct that Wells Fargo otherwise met the statutory definition of a debt collector, it was subject to the § 1692a(6)(A) exemption. In other words, rather than "necessarily determining" that Wells Fargo was a debt collector (as Shedd characterizes the June 13 Order), the Court merely assumed – without deciding – that Wells Fargo otherwise met the statutory prerequisites to be
(Continued)

-5-

presence of a controlling question of law is not sufficient to warrant § 1292(b) certification; rather, the statute requires "substantial ground for difference of opinion" as to that controlling question of law. Thus, "a court faced with a motion for certification must analyze the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." *APCC Services, Inc. v. AT & T Corp.*, 297 F. Supp.2d 101, 107 (D.D.C. 2003). "The mere absence of binding authority does not constitute a showing sufficient to satisfy § 1292(b), where numerous federal decisions are adverse to the movants' position and movants have failed to cite a single case authority or legal argument" to the contrary. *Williams v. Saxon Mortg. Co.*, 2007 WL 4105126, *2 (S.D. Ala. Nov. 15, 2007). Rather, "[t]o demonstrate the existence of a substantial ground for difference of opinion, the appellant must show that at least two courts interpret the legal principle differently." *Ibrahim v. FINR III, LLC*, 2016 WL 409630, *3 (M.D. Fla. Feb. 3, 2016) (citation and internal quotation marks omitted).

After careful examination of Shedd's briefs, the Court concludes that she has not satisfied her burden of demonstrating a substantial ground for difference of opinion as to whether the FDCPA covers a creditor collecting its own debt in its own name. In briefing the issue on Wells Fargo's Rule 12(c) Motion, Shedd failed to identify a single case interpreting the § 1692a(6)(A) exemption as <u>not</u> covering creditors. She repeats the omission on her Motion for Interlocutory Appeal. Despite all her rhetoric spanning dozens of pages, Shedd identifies no decisional authority from any jurisdiction that construes the § 1692a(6)(A) exemption in the manner she says it should have been interpreted here.

In an unsuccessful attempt to obscure this fundamental deficiency, Shedd engages in at least three tactics. First, she criticizes the June 13 Order as being "contrary to recent rulings of the Eleventh Circuit" (doc. 227, at 1) and says it "runs counter to Eleventh Circuit and Supreme Court precedent" (doc. 224, at 5); however, none of the cases she cites even mention the § 1692a(6)(A) exemption, much less apply it. In fact, one of the decisions on which Shedd relies

---

deemed a debt collector for FDCPA purposes. Thus, any construction of that Order as having "necessarily decided" the question is incorrect.

cuts sharply and decisively against her position.[4] In *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309 (11th Cir. 2015), the Eleventh Circuit observed, "Unlike debt collectors, **creditors typically are not subject to the FDCPA**." *Id.* at 1313 (emphasis added).[5] The *Davidson* court identified only two circumstances in which a creditor may be subject to the FDCPA, to-wit: (i) a creditor who "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another" is not considered a FDCPA creditor and therefore may be liable; and (ii) a creditor who "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts" may have FDCPA liability. *Id.* at 1313-14. Shedd has not argued – and the pleadings do not support an inference – that either of these circumstances is present here. Thus, the June 13 Order is fully consistent with the *Davidson* ruling that "creditors typically are not

---

[4] Another Eleventh Circuit case on which Shedd relies is inapposite. In *Johnson v. Midland Funding, LLC*, 823 F.3d 1334 (11th Cir. 2016), the Eleventh Circuit examined the relationship between the Bankruptcy Code and the FDCPA as it relates to filing proofs of claim in a bankruptcy case. Along the way, the *Johnson* court made certain general pronouncements such as stating that "the FDCPA does not reach all creditors" and that it "kicks in only when the creditor is a debt collector" as defined in the FDCPA. *Johnson*, 823 F.3d at 1339, 1341. The *Johnson* court did not purport to examine any of the exemptions to the FDCPA definition of "debt collector," much less the particular exemption set forth at § 1692a(6)(A), or to catalog the scenarios under which a "creditor" under the FDCPA would or would not qualify as a debt collector. *Johnson*'s general comments about FDCPA and creditors are not particularly illuminating here, and Shedd's reliance in her reply brief on bits and pieces of language extracted from *Johnson* (*see* doc. 337, at 4) out of context does not advance her cause.

[5] This aspect of *Davidson* finds broad support among federal appellate courts. *See, e.g., Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013) ("the FDCPA generally applies to debt collectors, but not to creditors, except to the extent that [a creditor] receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another") (citation and internal quotation marks omitted); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403 (3rd Cir. 2000) ("Creditors – as opposed to 'debt collectors' – generally are not subject to the FDCPA."); *Aubert v. American General Finance, Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) ("Creditors who collect in their own name and whose principal business is not debt collection … are not subject to the Act. … Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill, their debt collection activities are not subject to the Act unless they collect under a name other than their own.").

subject to the FDCPA." Plaintiffs' reliance on *Davidson* to satisfy the "substantial ground for difference of opinion" prong of the § 1292(b) certification standard thus fails.[6]

As a second means of steering the focus away from the dearth of authority interpreting the § 1692a(6)(A) exemption in the manner she advocates, Shedd implies that this Court derived its conclusions in the June 13 Order from thin air, with minimal supporting caselaw. Indeed, Shedd maintains that the June 13 Order "relies primarily on *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987)." (Doc. 224, at 6.) This statement is inaccurate. The June 13 Order did not rely "primarily" on *Kimber*; to the contrary, *Kimber* was one of nearly a dozen opinions (eight of which originated in this Circuit) cited in the Order that interpreted the §

---

[6] There is a deeper problem with the authorities and arguments presented on pages 5 through 8 of Shedd's § 1292(b) Motion (doc. 224) in support of the "substantial ground for difference of opinion" prong. In that section of her analysis, Shedd presents appellate authorities standing for the proposition that statutes should be construed narrowly and that the Eleventh Circuit has resisted efforts to engraft additional language onto the terms of the FDCPA. None of these arguments or authorities were presented by plaintiffs in briefing the Motion for Judgment on the Pleadings. The entire line of reasoning presented on pages 5 through 8 of the Motion is a brand-new argument that Shedd is unveiling for the first time in her § 1292(b) Motion. Courts have declined to certify interlocutory appeals grounded in newly raised arguments. *See, e.g., Broad v. Hitts*, 2011 WL 5546298, *2 (M.D. Ga. Nov. 14, 2011) ("Amerisure cannot now raise new arguments for summary judgment in a motion for interlocutory appeal"); *Lindley v. Life Investors Ins. Co. of America*, 2010 WL 2465515, *4 (N.D. Okla. June 11, 2010) ("the Court will not consider this new argument as a ground to certify an interlocutory appeal"). It would make little sense, and would be inefficient to the extreme, to allow a litigant on interlocutory appeal to present previously available arguments to the appellate court that it never articulated to the district court. More generally, under settled rules of practice, it is highly unlikely that the Eleventh Circuit would even consider such newly raised arguments on appeal. *See Ramirez v. Secretary, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012) ("It is well-settled that we will generally refuse to consider arguments raised for the first time on appeal."); *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[T]oo often our colleagues on the district courts complain that the appellate cases about which they read were not the cases argued before them. We cannot allow Plaintiff to argue a different case from the case she presented to the district court.") (citation omitted); *Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court."); *FDIC v. Verex Assurance, Inc.*, 3 F.3d 391, 395 (11th Cir. 1993) ("appellate courts generally will not consider an issue or theory that was not raised in the district court") (citation omitted). Obviously, if the legal basis for Shedd's interlocutory appeal would not properly be before the appellate court, then she will have an extraordinarily difficult time establishing a "substantial ground for difference of opinion" to support § 1292(b) certification for the purpose of raising procedurally improper arguments before the Eleventh Circuit at this time.

1692a(6)(A) exclusion as reaching creditors themselves, not just their employees and officers. It is thus incorrect to paint *Kimber* as an isolated decision that stands alone in FDCPA jurisprudence, or to portray the June 13 Order as blindly adhering to a singular outlier trial court case that is out of step with the heartland of authorities.[7] As shown by both the June 13 Order

---

[7] Truth be told, the June 13 Order recited only a small subset of the universe of authorities that have interpreted the FDCPA as excluding most creditors. *See, e.g., Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002) ("creditors who are attempting to collect their own debts generally are not considered debt collectors under the statute"); *McZeal v. Ocwen Financial Corp.*, 2001 WL 422375, *1 (5th Cir. Mar. 28, 2001) ("a creditor, such as Ocwen, that collects its own debt obtained prior to default is *not* a debt collector under the FDCPA"); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors"); *McCrimmon v. Mariner Finance North Carolina, Inc.*, 154 F. Supp.3d 256, 258 (M.D.N.C. 2016) (citing § 1692a(6)(A) in support of conclusion that "Mariner does not qualify as a debt collector for the purposes of the FDCPA. Instead, Mariner is a creditor because it extended credit directly to McCrimmon."); *Rajbhandari v. U.S. Bank*, 305 F.R.D. 689, 692 (S.D. Fla. 2015) ("[a] debt collector does not include the consumer's creditors") (citations omitted); *Ware v. Bank of America Corp.*, 9 F. Supp.3d 1329, 1337 (N.D. Ga. 2014) ("a consumer's creditors or an assignee of a debt are not considered 'debt collectors'" for FDCPA purposes); *Deutsche Bank Trust Co. Americas v. Garst*, 989 F. Supp.2d 1194, 1201 (N.D. Ala. 2013) ("the FDCPA does not apply to creditors who seek to collect only what is owed them"); *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp.2d 1273, 1294 (N.D. Ala. 2013) ("In general, the FDCPA applies only to debt collectors *and not to* creditors ….") (citation and internal quotation marks omitted); *Jara v. Aurora Loan Services*, 852 F. Supp.2d 1204, 1211 (N.D. Cal. 2012) ("[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors") (citation omitted); *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp.2d 1293, 1301 (N.D. Ga. 2010) ("The FDCPA is generally inapplicable to a 'creditor' unless that entity has used a third-party name to collect its own debt."); *Reese v. JPMorgan Chase & Co.*, 686 F. Supp.2d 1291, 1308 (S.D. Fla. 2009) ("[t]he Amended Complaint clearly establishes that neither Chase, nor Chase Home Finance are 'debt collectors' as contemplated by the [FDCPA] which explicitly excludes a consumer's creditors"); *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp.2d 176, 190 (S.D. Tex. 2007) (citing § 1692a(6)(A) exclusion to support conclusion that "[m]ortgage companies collecting debts are not 'debt collectors'" under the FDCPA); *In re Cooper*, 253 B.R. 286, 291 (N.D. Fla. 2000) ("Direct collection actions by creditors on their own debt do not fall within the provisions of the FDCPA."); *Franceschi v. Mautner-Glick Corp.*, 22 F. Supp.2d 250, 253 (S.D.N.Y. 1998) ("For the most part, creditors are not subject to the FDCPA."); *Jonak v. John Hancock Mut. Life Ins. Co.*, 629 F. Supp. 90, 94 (D. Neb. 1985) (the FDCPA's "protections are limited to the activities of 'debt collectors,' the definition of which excludes … creditors seeking to collect their own debts"); *Kizer v. Finance America Credit Corp.*, 454 F. Supp. 937, 939 (N.D. Miss. 1978) (examining § 1692a(6)(A) and other FDCPA sections and concluding that "debt collectors" covered by the act "are those who regularly collect debts for others and not creditors of consumers"); *Dinsmore v. Reliable Credit* (Continued)

and this Order, court after court after court has held that the FDCPA does not apply to creditors attempting to collect their own debts in their own name. The well-pleaded facts in the Third Amended Complaint establish that Wells Fargo falls into this category. There can be no "substantial ground for difference of opinion" here, especially given Shedd's failure to identify any authorities holding that a creditor in Wells Fargo's position can be liable under the FDCPA.

Third, Shedd disguises her lack of supporting authority through use of misleading rhetoric that "courts are divided as to whether a finding that a party is a creditor under (6)(a) entitles it to *per se* exemption as a debt collector." (Doc. 224, at 9.) The only case that Shedd appears to cite for the proposition that a "circuit split" exists as to whether creditors collecting their own debt in their own name may be subject to the FDCPA is a Ninth Circuit decision captioned *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204 (9th Cir. 2013). In *Schlegel*, the court indicated in a footnote that it rejected an absolute rule that "a person who meets the FDCPA definition of 'creditor' is *per se* not a 'debt collector.'" *Schlegel*, 720 F.3d at 1208 n.2. But the cases on which the undersigned relies in this Order and in the June 13 Order do not hold that creditors can <u>never</u> be FDCPA debt collectors.[8] Instead, what they establish – and what the

---

*Ass'n, Inc.*, 2011 WL 4755198, *3 (D. Or. Sept. 30, 2011) ("a creditor is not subject to the FDCPA except when seeking to collect debts due to it under an assumed name"); *Rispoli v. Bank of America*, 2011 WL 3204725, *3 (W.D. Wash. July 1, 2011) ("as a matter of law a 'debt collector' under the FDCPA cannot be a consumer's creditor"); *Castro v. Revere Collection Agency*, 1991 WL 147529, *2 (E.D. Penn. July 25, 1991) ("the Fair Debt Collection Practices Act does not apply to creditors except in certain circumstances not present in this case," namely where a creditor is collecting a debt owed to someone else, or when a creditor uses an alias in collecting its own debts); D. Pridgen & R. Alderman, *Consumer Credit and the Law* § 12:10 ("One of the most significant aspects of the FDCPA definition of debt collector is that it does not include a creditor attempting to collect his or her own debts.").

[8]    Nor did the June 13 Order declare that creditors are automatically, categorically forbidden from being classified as debt collectors under the FDCPA. To the contrary, the June 13 Order recognized that the FDCPA defines "creditor" in a manner that excludes persons who receive assignment or transfer of a defaulted debt solely for the purpose of facilitating collection of such debt for another. (Doc. 220, at 14.) Likewise, the case law cited in that Order observed the limitation that the creditor exclusion does not apply to creditors who are not collecting their own debts. (*Id.* at 15 n.16.) And the June 13 Order certainly did not reject or undermine statutory language extending FDCPA debt collector status to "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). The June 13 (Continued)

June 13 Order found – is that creditors typically are exempt from the scope of the FDCPA, except in certain narrow exceptions (*i.e.*, a creditor who receives a debt in default solely for the purpose of facilitating collection of such debt for another, or a creditor using a name other than its own in collecting its own debts) not present here. That is what the Eleventh Circuit explained just last year. *See Davidson*, 797 F.3d at 1313. And even courts in the Ninth Circuit post-*Schlegel* agree with that proposition.[9] There is no circuit split here.

For all of the foregoing reasons, the Court concludes that Shedd has not demonstrated a substantial ground for difference of opinion that might justify an interlocutory appeal as to the June 13 Order's determination that Wells Fargo is exempt from the FDCPA as a creditor collecting its own debt in its own name.[10]

---

Order did not discuss or analyze these exceptions to the general rule that creditors are not subject to the FDCPA because those exceptions plainly do not apply, based on the well-pleaded factual allegations of the Third Amended Complaint. Plaintiffs never maintained otherwise. In requesting certification of an interlocutory appeal, Shedd would seize on certain imprecise language from the June 13 Order, namely, the statement that "Wells Fargo is a creditor and therefore exempt from the FDCPA" (doc. 227, at 3 (citing doc. 220, at 16)), to assert that this Court was adopting a *per se* rule. For the reasons stated herein, that characterization is incorrect. The June 13 Order treats the interrelationship between creditors and the FDCPA in the same manner that the Eleventh Circuit did in *Davidson*, albeit expressed in slightly different terms. The general rule is, clearly and unambiguously, that creditors are not subject to the FDCPA. Are there exceptions to that general rule? Sure. But the Third Amended Complaint does not identify any facts or circumstances that might support application of any such exceptions here. Shedd cannot parlay the imprecise language in one sentence of the June 13 Order into a straw man enabling her to launch an interlocutory appeal that derails the orderly progress of these proceedings and puts this lawsuit on hold for potentially a year or longer while plaintiffs pursue a legal issue as to which no substantial ground for difference of opinion actually exists.

[9] *See, e.g., Patera v. Citibank, N.A.*, 79 F. Supp.3d 1074, 1090 (N.D. Cal. 2015) (recognizing that the FDCPA "excludes creditors collecting on their own debts") (citation omitted); *In re Ganas*, 513 B.R. 394, 405-06 (Bankr. E.D. Cal. 2014) ("with the limited exception of a creditor using an alias to make it appear that a third-party is involved, the FDCPA defined debt collector is limited to a person attempting to obtain payment on an obligation which was originally owed to another person").

[10] In her Motion, Shedd posits that a "corollary issue" should also be submitted to the Eleventh Circuit on interlocutory appeal. In particular, Shedd suggests that the appellate court might also adjudicate whether Wells Fargo constitutes a "creditor" under the FDCPA even though Judge Butler previously dismissed its counterclaim. (Doc. 224, at 11.) The June 13 Order addressed this argument in detail, finding it to be both (a) procedurally improper because it (Continued)

### C. The "Material Advancement" Requirement.

As noted, a separate criterion for certification of an issue for interlocutory review is that "immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "This is not a difficult requirement to understand. It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. Thus, in order for interlocutory appeal on a particular question to be appropriate, "the answer to that question must substantially reduce the amount of litigation left in the case." *Id.* "Unless a litigant can show that an interlocutory order of the district court might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal." *Carson v. American Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981).

Shedd has not come close to meeting this stringent legal standard. In discussing the "material advancement" requirement, Shedd explains that in the absence of § 1292(b) certification, she will be "not entitled to depose Wells Fargo witnesses on issues related to her FDCPA claim," and that such a denial "will seriously circumscribe the scope of discovery." (Doc. 224, at 10.) True enough. The June 13 Order dismissed the FDCPA cause of action against Wells Fargo; therefore, plaintiffs will not be permitted to undertake extensive, irrelevant discovery targeted at that now-dismissed claim. But where is the "serious, perhaps irreparable, consequence"? There is none. Merely arguing that plaintiffs would not be able to take as much

---

was raised for the first time in plaintiffs' Surreply, and (b) legally meritless because on a Rule 12(c) motion a court must accept as true all material facts alleged in the complaint, and the Shedds' pleading unambiguously alleged that Wells Fargo owned the debt. (*See* doc. 220, at 13-14 n.14.) Insofar as Shedd requests interlocutory review of this "corollary issue" of Wells Fargo's status as a creditor *vel non*, the Court declines to certify that issue and expressly finds that it meets <u>none</u> of the § 1292(b) criteria for interlocutory appeal. Among other problems, this issue is not a pure question of law and therefore is ill-suited for § 1292(b) review. *See, e.g., Mamani v. Berzain*, --- F.3d ----, 2016 WL 3349086, *7 (11th Cir. June 16, 2016) ("To be a pure question of law for purposes of § 1292(b), an issue must be an abstract legal issue that the court of appeals can decide quickly and cleanly.") (citation and internal quotation marks omitted). Also, Shedd has shown no substantial ground for difference of opinion as to the bedrock principle that Rule 12(c) motions are adjudicated solely on the pleadings, accepting as true all well-pleaded factual allegations therein.

discovery now as they might like does nothing to satisfy Shedd's burden of showing that an immediate appeal may materially advance the ultimate termination of the litigation. Based on the record and arguments before it, the Court readily concludes that granting an interlocutory appeal would not substantially reduce the amount of litigation. All of the Shedds' remaining claims that have not been dismissed will still have to be litigated through discovery and trial. The only difference is that, if interlocutory appeal is granted, the litigation of certain of those claims will grind to a halt for a potentially protracted period of time because of the partial stay that would necessarily accompany such interlocutory appeal.[11] Thus, interlocutory appeal would delay, not expedite, the final outcome of these proceedings and would guarantee multiple trials and discovery periods. That fact renders this case ill-suited for certification under § 1292(b). *See, e.g., Kennett v. Bayada Home Health Care, Inc.*, 2016 WL 374231, *4 (D. Colo. Feb. 1, 2016) ("When granting an interlocutory appeal will delay, rather than expedite, the ultimate outcome of the trial, federal courts have routinely declined to exercise their discretion to permit such appeals.").[12]

To understand the deficiencies in Shedd's position, it may be helpful to compare a "no-certification" scenario to a "certification" scenario. If no interlocutory appeal is allowed, then all of plaintiffs' remaining claims against Wells Fargo, Monument and Barclays will move forward

---

[11] Recall that Shedd has asked for all of plaintiffs' claims against defendants Wells Fargo and Monument to be stayed for the duration of any interlocutory appeal. Thus, she envisions a scenario in which plaintiffs' claims against Wells Fargo and Monument are stayed indefinitely while an interlocutory appeal happens, with plaintiffs' claims against defendant Barclays moving forward to trial in the interim.

[12] Nor does Shedd show "material advancement" by arguing that if interlocutory appeal is granted, and if the Eleventh Circuit reverses the FDCPA portion of the June 13 Order, it will trigger "more depositions against the same, previously-deposed witnesses … and a new trial." (Doc. 224, at 11.) Shedd readily admits that her FDCPA claim against Wells Fargo is "dependent on specific facts unrelated to her remaining claims." (Doc. 224, at 10; *see also* doc. 227, at 8 ("the FDCPA is not intertwined with other claims or parties").) Plaintiffs are going to have to depose fact witnesses regarding the other claims and other parties in any event. If an interlocutory appeal were allowed, many of those depositions would be delayed for a potentially extended period of time. Far from shortening the litigation, this stratagem would prolong it. A far more orderly and efficient course of action would be for plaintiffs to move forward with discovery and trial on all of their (concededly "unrelated") remaining claims against all defendants at this time. At the conclusion of those proceedings, a single unified appeal of all issues, including the FDCPA claim against Wells Fargo, can be taken to the Eleventh Circuit.

through discovery and trial in accordance with the governing Rule 16(b) Scheduling Order (doc. 206). After trial on those claims concludes, plaintiffs may (if they wish) appeal the FDCPA issue – along with any other appealable issues that any party decides to pursue – to the Eleventh Circuit in a single consolidated appeal. If the appellate court were to grant relief on the FDCPA issue or any other, then the case may be remanded for further proceedings, including potentially FDCPA-focused discovery and trial. By contrast, if an interlocutory appeal is certified, then all of plaintiffs' claims against Wells Fargo and Monument will be stayed, with only their claims against Barclays proceeding through discovery and trial. At the conclusion of the interlocutory appeal, if the Eleventh Circuit grants relief, discovery would be reopened as to Wells Fargo and Monument and there would be a second trial involving plaintiffs' claims against those defendants. Such discovery and trial would embrace not only the newly-reactivated FDCPA claim, but also plaintiffs' other pending claims that were simply lying fallow in the interim. Following that second trial, any party wishing to appeal any issue could present a second appeal (this one as a matter of right) to the Eleventh Circuit, raising the potential of a third round of discovery or even a third trial if relief were granted on any of those issues. This latter scenario constitutes piecemeal litigation and piecemeal appeals at their worst.

The point is simple: Certifying interlocutory appeal of the FDCPA claim will not avoid a trial or otherwise substantially shorten the litigation. To the contrary, it will almost certainly delay the proceedings and will complicate and impede the orderly flow of this matter by creating multiple, staggered sets of proceedings with discovery and trial happening in waves as to different defendants at different times. Particularly given the fact that this case is well over two years old and has already been delayed far longer than reasonably necessary because of suspect litigation strategies, the Court has neither inclination nor appetite for exercising its discretion in a manner that will prolong them further, with no countervailing benefits in efficiency.

For all of these reasons, the Court finds that Shedd has not satisfied her burden of demonstrating that interlocutory appeal of the FDCPA ruling in the June 13 Order would materially advance the ultimate termination of the litigation. Thus, § 1292(b) certification is inappropriate because movant has established neither a substantial ground for difference of opinion on a controlling issue of law, nor a likelihood that interlocutory review will materially advance the ultimate termination of these proceedings. The Motion to Certify for Interlocutory Review is properly **denied** on both of these independent grounds.

**III.    Motion for Rule 54(b) Final Judgment.**

In the alternative, Shedd moves for entry of final judgment on Count Sixteen pursuant to Rule 54(b), Fed.R.Civ.P.

"Ordinarily, … an order adjudicating fewer than all the claims in a suit, or adjudicating the rights and liabilities of fewer than all the parties, is not a final judgment from which an appeal may be taken." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1288 (11th Cir. 2010) (citations omitted).  Rule 54(b) creates an exception to this general principle by establishing a mechanism through which the district court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Rule 54(b), Fed.R.Civ.P.  Shedd invokes that rule here and requests that the Court make a "no just reason for delay" determination, thereby allowing her to take an immediate appeal of the portion of the June 13 Order that dismissed her FDCPA claim against Wells Fargo without awaiting final disposition of plaintiffs' remaining claims against all three defendants.

"A district court must follow a two-step analysis in determining whether a partial final judgment may properly be certified under Rule 54(b).  First, the court must determine that its final judgment is, in fact, both 'final' and a 'judgment.' … Second, … the district court must then determine that there is no 'just reason for delay' in certifying it as final and immediately appealable." *Lloyd Noland Foundation, Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007) (citations omitted).  The second step is of crucial importance here.  The Eleventh Circuit has emphasized that circumstances in which Rule 54(b) certification is appropriate "will be encountered only rarely." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 166 (11th Cir. 1997); *see also In re Southeast Banking Corp.*, 69 F.3d 1539, 1547 (11th Cir. 1995) (Rule 54(b) certification is warranted only in the "infrequent harsh case").  In that regard, Rule 54(b) must be applied in a manner that "preserves the historic federal policy against piecemeal appeals," while also constraining its use to "instances in which immediate appeal would alleviate some danger of hardship or injustice associated with delay." *Ebrahimi*, 114 F.3d at 166 (citations omitted).  What this means, then, is that "Rule 54(b) certifications must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Id.* (citation and internal quotation marks omitted).

This is not such an "unusual case." Here, the dangers of piecemeal appeals and needless proliferation of proceedings are not offset by "pressing needs of the litigants." Indeed, there are no such "pressing needs." Shedd's only identified "hardship" is her belief that the June 13 Order got it wrong and that she does not want to wait to take discovery on her FDCPA claim against Wells Fargo. (Doc. 224, at 15.) That is not sufficient, as a matter of law. *See, e.g., Morgan v. Bill Vann Co.*, 2013 WL 5445632, *2 n.2 (S.D. Ala. Sept. 30, 2013) ("Courts may not accommodate attorneys just because they want to appeal immediately ….") (citations omitted); *McCann v. Mobile County Personnel Bd.*, 2006 WL 2355405, *3 (S.D. Ala. Aug. 14, 2006) (to qualify under Rule 54(b), "[a]ny such hardship must be 'unusual,' extending beyond the inevitable consequence of awaiting resolution of one's case") (citation omitted). To be sure, Shedd complains that "the events in question occurred years ago and she is presently facing a balloon note in August 2016." (*Id.*) But granting a Rule 54(b) certification would neither change that fact nor alter that hardship. To the contrary, such a certification would introduce new, extensive and unnecessary delay to 75% of her claims against Wells Fargo to enable her to pursue an immediate (and in this Court's view, patently futile) appeal of an adverse ruling as to the other 25%. (*See* doc. 224, at 15 ("resolving this threshold issue now … will indeed resolve at least 25 percent of the case against Wells Fargo").)

Simply put, the Court is convinced that this is not one of the rare cases in which Rule 54(b) certification is appropriate. There is no indication and no reason to believe that immediate appeal of the June 13 Order would alleviate some danger of hardship or injustice to Shedd. As such, her alternative Motion for Entry of Rule 54(b) Final Judgment is properly **denied**.

## IV. Conclusion.

For all of the foregoing reasons, plaintiff Pam Shedd's Motion to Amend and Certify Order for Interlocutory Review, or in the Alternative for Entry of Rule 54(b) Final Judgment (doc. 224) is **denied** in its entirety.

DONE and ORDERED this 31st day of August, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE